WILLIAM E. T. SMITH et al., Respondents, *v.* JOHN J. BARTLETT, Appellant.

WILL — WHEN DEVISES OF LANDS ON BOTH SIDES OF A NAVIGABLE RIVER CARRY TITLE TO THE THREAD OF THE STREAM. Separate devises of lands upon the east and west sides of a river where the devisor owns the lands under the water thereof, in the absence of any clause limiting them to the banks of the river, carry the title to the center or thread of the stream, although the river is navigable and the tide ebbs and flows therein.

*Smith* v. *Bartlett*, 79 App. Div. 174, reversed.

(Argued January 24, 1905; decided February 3, 1905.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered January 26, 1903, affirming a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Jesse Johnson* for appellant. A conveyance of property bounded by a street or by a stream carries title to the center, when the grantor owns so far. (2 Devlin on Deeds [2d ed.], § 1028a; Gould on Waters [3d ed.], § 195; Farnham on Waters, 2523, 2624, § 859; *Low* v. *Tibbitts*, 72 Me. 92; *Lapish* v. *Bangor Bank*, 8 Greenl. 85; *Pike* v. *Monroe*, 36 Me. 309; *Doane* v. *Willcutt*, 5 Gray, 328; *Adams* v. *Frothingham*, 3 Mass. 352; *Storer* v. *Freeman*, 6 Mass. 435; *Commonwealth* v. *Alger*, 7 Cush. 53; *Hathaway* v. *Wilson*, 123 Mass. 359; *Litchfield* v. *Scituate*, 136 Mass. 39; *City of Boston* v. *Richardson*, 105 Mass. 351; *Sage* v. *Mayor, etc.*, 154 N. Y. 61; *Wheeler* v. *Spinola*, 54 N. Y. 377.) There is nothing in the language of the devise under which defendant claims to rebut the presumption that title was thereby granted to the center of the stream. (*Luce* v. *Carley*, 24 Wend. 450; *Potter* v. *Boyce*, 73 App. Div. 383; *Lozier* v. *N. Y. C. R. R. Co.*, 42 Barb. 465; *Matter of Cathedral Parkway*, 20 App. Div. 404; *Tinker* v. *M. El. Ry. Co.*, 81 Hun, 591; *McGruden* v. *R. Ry. Co.*, 25 N. Y. Supp. 114; *Bissell* v. *N. Y. C. R. R. Co.*, 23 N. Y. 61; *Perrin* v. *N. Y. C. R. R. Co.*, 36 N. Y. 120; *Sherman* v. *McKeon*, 38 N. Y. 266; *Matter of Ladue*, 118 N. Y. 221; *Gouverneur* v. *N. I. Co.*, 134 N. Y. 355; *Habberman* v. *Baker*, 128 N. Y. 253; *Hennessy* v. *Murdock*, 137 N. Y. 317.) This entire river cannot be attached to the land devised to the sons by reason of the word "appurtenances" contained in the devise to one of them. (*Aiken* v. *Wasson*, 24 N. Y. 482; *Coffin* v. *Reynolds*, 37 N. Y. 640; *Jackson* v. *Hathaway*, 15 Johns. 447; *Ogden* v. *Jennings*, 62 N. Y. 526; *Armstrong* v. *Dubois*, 90 N. Y.

95; *Lawrence* v. *Whitney*, 115 N. Y. 410; *Woodhull* v. *Rosenthal*, 61 N. Y. 382.)

*Clarence G. T. Smith* for respondents. Connecticut river being a navigable stream, the west bank of said river was the east boundary in the devise to Colonel Smith's daughters, Jeane and Gloryana, in which he devised to them "all my land and meadow on ye west side of Connecticut or Sebornuck river, beginning at the head of Yaphank, and by a north line until it comes again to ye river, as in my patent set forth." (*Stillman* v. *Burfund*, 21 App. Div. 15; 3 Kent's Comm. 427; *Attorney-General* v. *Chambers*, 4 De G., M. & G. 206; *Howard* v. *Ingersoll*, 13 How. [U. S.] 381; *United States* v. *Pacheco*, 2 Wall. 587; *Wiswall* v. *Hall*, 3 Paige, 313; *Morgan* v. *King*, 30 Barb. 9; *People* v. *Canal Appraisers*, 33 N. Y. 465; *Halsey* v. *McCormick*, 13 N. Y. 296; *Ex parte Jennings*, 6 Cow. 518; Angell on Tide Waters, 73; *Smith* v. *City of Rochester*, 92 N. Y. 463; *Sage* v. *Mayor, etc.*, 154 N. Y. 69.) The devises under Colonel Smith's will to his sons William Henry and Charles Jeffery are sufficiently broad to include the premises in question, and particularly under the words "with all other appurtenances." (*Archibald* v. *N. Y. C. & H. R. R. R. Co.*, 157 N. Y. 578; *Wetmore* v. *Peck*, 66 How. Pr. 54; *Jackson* v. *White*, 8 Johns. 47; 1 Jarman on Wills [6th Am. ed.], 754; *Otis* v. *Smith*, 9 Pick. 223; *Buck* v. *Newton*, 1 Bos. & P. 53; *U. S.* v. *Harris*, 1 Sumn. [U. S.] 37.)

Haight, J. This action was brought to determine the ownership of the lands under water of the west half of Connecticut or Carman's river on Long Island. The plaintiffs are the owners of the upland on the east side of the river and the defendant is the owner of that abutting upon the lands in dispute upon the west side of the river. The property in question is a portion of the land included in the patent to Colonel William Smith from Colonial Governor Fletcher, dated October 9, 1693, which conveyed to him a large tract of

land on both sides of Long Island in the town of Brookhaven, including that under water, and was bounded on the west by " the westermost bank of a river called East Connecticut, and soe along the banke of the sd river to a creek running out of the sd river, called Yaphanke, and soe along the southwest bank of ye sd creek unto its head, the whole creek included, to a marked pine tree at ye head of ye sd creek, and soe in a direct north lyne until it comes to the bank of Connecticut River aforesd to a marked tree on the west syde of said river." On the 23d day of April, 1704, Colonel William Smith executed his last will and testament, which is recorded in the surrogate's office of the city and county of New York. The respective parties hereto claim title under this will and their rights must be determined upon the construction that should be given to its provisions. After making various devises of real estate to his other children, he devised to his son William Henry Smith as follows : " After his mother's death my house on the south side of this island within the mannor of St. Georges which stands on Sebornucke Neck with a full moyety or halfe part of all my land and meadow on the south-side of this island within my mannor of St. Georges afforesd and being esteward of Connecticut or Sebormuck River with an entire moytie of my beach from Cupswoge gut Easteward to the head of Longe Cove Westward  *  *  * with one entyre right of commondage & to all future divissions of undivided land wch shall or may hereafter acrew due to the sd acomodacon which land premises with all other apurtinances my will is that hee the said William Henry his heirs executors administrators or assigns shall have hould and enjoy forever." The other half was devised to his son Charles Jeffery Smith, with the proviso that if he should die under age and without issue the whole should go to William Henry. Charles Jeffery did die under age and without issue, and thereby William Henry Smith became vested with the whole of the property so devised. He also devised to his youngest daughters Jeane and Gloryana to be equally divided between them " all my land and meadow on ye west

side of Connecticut or Sobomuck River beginning at the head of Yaptianeck and by a north line until it comes again to ye river as in my patent set forth."

The trial court has found as a fact that the Connecticut river was a navigable stream, in which the tide ebbed and flowed, and then construes the will to the effect that it was the intention of the testator to limit the eastern boundary of the land devised to the daughters to the western bank of the river at high-water mark; that the testator intended to dispose of all of his real property and did not intend to die intestate as to any part thereof, and that the lands under the waters of the river passed to his son William Henry under what is denominated as the devise of the residue.

For the purposes of this case we may assume that the devise, so called, is sufficiently broad to vest in the son William Henry all of the lands on the south side of the island not otherwise devised and disposed of by the will, and that it included all of the lands under water of the Connecticut river below Yaphank creek, so that his western boundary is the western bank of the river, as described in the patent of the testator, and that the testator intended to dispose of all of his real property by his will.

The question remaining is as to what the testator intended to devise to the sons named and to the daughters. It will be observed that to these sons he gave that which was on the east side of the river, and unto the daughters he devised that which was upon the west side of the river above Yaphank creek, where he was the owner of the lands upon both sides. Neither the devise to the sons or to the daughters is bounded upon the bank of the river. It was, doubtless, the rule at common law that in patents or grants from the king, bounded upon the high seas or navigable streams in which the tide ebbed and flowed, the high-water mark was deemed the boundary line, leaving the tideway and the lands under the waters still in the crown for the use and benefit of the public. But the king had the power, for commercial and other purposes, to make grants of lands under water to the abutting owners of

the uplands, subject to the public easement of navigation, and such we understand to be the power of our commissioners of the land office in this state. The devise to these children of lands upon the east side and upon the west side of this river, in the absence of any clause limiting it to the banks of the river, were it a fresh water stream, undoubtedly, would be construed to carry the title to the center or the thread of the stream. (*Smith* v. *City of Rochester*, 92 N. Y. 463, 479; *Gouverneur* v. *National Ice Co.*, 134 N. Y. 355, and see authorities there cited.) But because of its being a river in which the tide ebbs and flows, it is contended that the devise only ran to high-water mark upon the bank; this would be the rule of construction were it not for the fact that the crown had already granted to the testator the lands under the waters of this river, thereby vesting in him the power to convey or devise the same. In such a case, we think the rule of construction as to the boundary line is the same as that recognized with reference to fresh water and non-navigable streams.

In Devlin on Deeds (2d ed.), vol. 2, section 1028A, it is stated that "The natural presumption where a deed conveys land bordering on a stream or highway is, that the grantor means to convey what he owns, and not to reserve a strip of land of no value to him, but the loss of which to the grantee might be productive of great injury. He has power by apt words to reserve what, and as much as he pleases, or so to frame the language of his conveyance as to limit the land conveyed to the line of the stream or highway, without extending further, and, in all such cases, courts are bound to give effect to his expressed intention. But in the absence of words showing such an intention, it is not presumed that the grantor intended to retain in himself the fee to the street or stream, when he has parted with the adjoining land. Therefore, it may be said to be a universal rule, that a deed giving a stream as a boundary, will convey title to the center of the stream or to low or high-water mark, depending upon how far the grantor's title extends. By such a description, the grantor will convey all that he owns, unless a contrary intent

appears from the language of the deed. The deed is taken most strongly against the grantor in the application of this rule, and courts will not favor the presumption that he has retained title to the bed of the stream."

In Gould on Waters (3d ed., section 195) the principle is stated as follows: "When riparian estates are conveyed the owner may reserve the land under water, but the general presumption is that the purchaser's title extends as far as the grantor owns, *in both tidal and fresh waters.* The legal effect of the conveyance is determined by the terms employed, and cannot be controlled by parol testimony, unless there is a latent ambiguity, or the description itself is rejected as false, or the identical boundary referred to in the conveyance is in dispute."

In 3 Kent's Commentaries (last edition, 433, 434) the chancellor says: "It may be considered as the general rule, that a grant of land bounded upon a highway or river carries the fee in the highway or river to the center of it, provided the grantor at the time owned to the center and there be no words or specific description to show a contrary intent."

In 4th American and English Encyclopædia of Law (823) is the following: "When a deed describes lands so bounded by a river, which is navigable in fact, the rule, *prima facie*, is, that the deed conveys as far as the grantor owns." And see authorities there cited.

In the case of *Archibald* v. *N. Y. C. & H. R. R. R. Co.* (157 N. Y. 574) the commissioners of the land office had conveyed the lands in question under the waters of the Hudson river to the upland owner, from whom the plaintiff had, through one or more mesne conveyances, claimed title. It was held that the conveyance to her of the adjacent upland was intended to, and did include the lands under water, although not specifically described. (See, also, *Oakes* v. *De Lancey*, 71 Hun, 49; affirmed, 143 N. Y. 673; *Dunham* v. *Williams*, 37 N. Y. 251).

As we have seen, there are no limitations in the devise to the daughters to the bank of the river at either high or low-

water mark. They were given that which was upon the west side of the river above Yaphank creek; to the sons there was given that which was eastward of the river. It is true that the defendant has not been able to trace his record title back to the daughters, but he has established such title extending back for upwards of one hundred years with possession thereunder, which, under the presumption to which we have called attention, extended to the center of the river. The plaintiffs have attempted to establish a record title to the lands in dispute in themselves, but in this we think they have failed. Above the point where the Yaphank creek entered the river the testator owned not only the bed of the river but the lands upon either side. He had the power to devise the same, perhaps subject to the easement of navigation by the public. No reason is disclosed why he should cut off his daughters and deprive them of the use of the river adjacent to the premises devised to them, and under the circumstances disclosed we think there was no intention on his part to do so. We think that the devise to the sons as to the locality in question ran to the center of the river and that the daughters, to whom were given the lands upon the west side, also became vested with the title to the center of the stream.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, O'BRIEN, BARTLETT, VANN and WERNER, JJ., concur.

Judgment reversed, etc.