M. ELLA WILLIAMS et al., Individually and as Executors of MARY R. LEWIS, Deceased, Respondents, v. THE CITY OF UTICA, Appellant.

Mohawk river — title to land under the river — ejectment — action to recover land formerly lying in bed of the Mohawk river but now some distance from channel as the result of straightening the river under statutory authority — facts examined, and held, that plaintiffs have title to land in question through grant from George the Second and mesne conveyances.

1. The courts have frequently held that the title to the bed of the Mohawk river, generally, has not passed to the grantees of riparian lands, but has remained in the people of the state. This has been held by the application of two theories: *First*, that in grants made to settlers of the Mohawk valley under the Dutch government the bed of the river was excepted, and, therefore, passed as unconveyed lands to Great Britain, and still later to the state of New York; or, *second*, that the rule of the English common law, which treated as navigable and public only those streams where the tide ebbed and flowed, was not applicable to our country; that the proper test was of actual navigability, and that where a stream was actually navigable, as the Mohawk was, it was subservient to the public use, and, therefore, that a conveyance bounded by or upon it would carry only to the bank, and not to the center of the stream.

It is held, however, that the sovereign power might, if it saw fit, convey the title to the bed of a stream subject to public purposes and uses, and that such a conveyance if made by the English sovereign before the separation of the colonies, is to be recognized.

2. This is an action of ejectment to recover a parcel of land formerly lying in the bed of the Mohawk river within the limits of the city of Utica, to which the defendant claims title from the state. The land in question now lies some distance from the channel of the river as the result of straightening the river under the authority of an act of the legislature. The plaintiffs contend that the state had no title to the bed of the Mohawk river at the point in question at the time it attempted or purported to convey title thereto to the defendant, but that it was conveyed to plaintiffs' predecessors in title by a grant, or patent, executed by George the Second in 1734 and that there is a complete chain of title to such land from the king's patentees to the plaintiffs. *Held*, upon examination of the evidence showing the source and the history of the title to the lands in question, prior to the execution of the patent, and upon construing the patent itself, that King George, having title to the bed of the stream at the time the patent was executed, did intend to and did convey the same to the patentees therein named subject to public rights and uses.

3. It is contended that, because the patent described the lands therein conveyed as " lying and being  *  *  *  on both sides of the Mohawk river," there was thereby evidenced an intent not to include the intervening bed of the river, and that hence title thereto was in the state. *Held*, that although the general location of the land was fixed by reference to the river, the conspicuous landmark of that country, and by statement that it extended a stated distance on both sides of the river, this general location of the tract ought not to be construed as overruling the definite and exact boundary lines set forth in the patent, which not only included the bed of the stream but also included an amount of land corresponding with remarkable accuracy to the large acreage of land called for by the grant. Such boundary lines were controlling and carried title to the bed of the stream, subject to public rights and uses.

*Lewis* v. *City of Utica,* 159 App. Div. 160, affirmed.

(Argued October 29, 1915; decided January 25, 1916.)

APPEAL from a judgment entered November 21, 1913, upon an order of the Appellate Division of the Supreme

Court in the fourth judicial department, reversing a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term and awarding judgment in favor of plaintiffs on new findings.

The determination of this appeal almost exclusively involves and depends on the construction and effect of a patent executed by George the Second of England in 1734 of lands partly situate in what is now Oneida county and historically known as the Cosby Patent.

Under date of October 5, 1734, William Cosby, "Captain General & Governour in Chief of the Province of New York," and other officers of said province certified that Joseph Warrell and others had presented a petition setting forth that "Nicholas Eker and Sundry other Germans * * * pursuant to a Lycense Granted them by Govr. Burnet," had purchased in his late Majesty's name "All that Tract of Land in the Mohawks Country on both sides of the River between the Great fflat or Plain above the fall and the Land granted to the wife & Children of Johan Jurch Kast as also another Tract of Land beginning on the West side of the Granted Lands on both sides of the said River running up Westward to a certain Creek Called Sadahqueda & in breadth in the woods on both sides of the said River Six English Miles," and that they, the said petitioners, had purchased "from the said Germans all their rights and interest in said Land," and praying that there be granted to them "Letters Patent for twenty-two thousand acres part of the lands purchased of the Germans as aforesaid," and said officials further certified that in accordance with said petition and "his Majesty's Royall Instructions" they had "Set out for the said Joseph Warrell * * * a Certain Tract or Parcel of Land Scituate lying and being in the County of Albany on both sides of the Mohawks River Beginning at a certain place on the south side of the said Mohawks River and the West side of a Brook

1916.]                Statement of case.              [217 N. Y.]

called Sadaghqueda where said Brooks falls into the said
River & runs thence South thirty-eight Degrees West
two hundred & thirty eight Chains then south fifty-two
Degrees East four hundred and eighty-three Chains then
north thirty-eight Degrees East four hundred & eighty
Chains then north fifty-two Degrees West four hundred
& eighty-three Chains & then South thirty-eight Degrees
West two hundred and forty-two Chains to the place
where it began containing twenty-two thousand Acres of
Land and the usual Allowance for Highways and setting
out thereof we have had regard to the profitable and
unprofitable Acres and have taken care that the Length
of said Lands do not extend along the Banks of any River
otherwise than is conformable to His Majestys Royall
Instructions for that purpose."

Under date of January 8, 1734, George the Second by
Governor Cosby executed a patent which, after reciting
parts of the Warrell petition above set forth and that the
officials of the province had " set out " for said petitioners
the premises described in their certificate, did " Give
Grant Ratifie and Confirm unto the said Joseph Warrell "
(and his associates) all that tract or parcel of land
described in the above-mentioned certificate " Containing
in the whole twenty-two thousand Acres of Land besides
the usual Allowance for Highways together with all and
singular the woods and underwoods Trees Timbers feed-
ings. pastures Meadows Marshes Swamps ways waters
water Courses, *Rivers* Brooks, &c.," etc.   " To Have and
To Hold all and every the said Tract or Parcel of Land
Lands Tenements   *   *   *   Yielding rendering and
paying therefore Yearly   *   *   *   the Yearly Rent of
two shillings and six pence for each hundred acres of the
above granted Lands."

*August Merrill, Corporation Counsel* (*William J.
Powers* and *Irving K. Baxter* of counsel), for appellant.
The Mohawk river is a navigable river and the courts of

this state have always taken judicial notice of that fact. (*Crill* v. *City of Rome*, 47 How. Pr. 398; *Jones* v. *Jones*, 1 How. Pr. [N. S.] 510; *People ex rel. Loomis* v. *Canal Appraisers*, 33 N. Y. 461; *People* v. *Page*, 39 App. Div. 110; *Lee* v. *Childs*, 140 App. Div. 699; *Ten Eyck* v. *Town of Warwick*, 75 Hun, 562.) The doctrine of the common law does not apply to the Mohawk river. The courts of this state have uniformly held the doctrine of the civil law to be more suitable and so have adopted the same. The state through its legislature at an early date repudiated the doctrine of the common law as being inapplicable to the Mohawk river and has uniformly asserted its rights in accordance with the doctrine of the civil law. (*People ex rel. Loomis* v. *Canal Appraisers*, 33 N. Y. 461; *Canal Appraisers* v. *People*, 17 Wend. 610; *Lowber* v. *Wells*, 13 How. Pr. 456; *Morgan* v. *King*, 35 N. Y. 454; *Chenango Bridge Co.* v. *Paige*, 83 N. Y. 178; *Smith* v. *City of Rochester*, 92 N. Y. 463; *Groat* v. *Moak*, 94 N. Y. 115; *Town of Brookhaven* v. *Smith*, 188 N. Y. 74; *Roberts* v. *Baumgarten*, 110 N. Y. 380; *Hinckel* v. *Stevens*, 165 N. Y. 171; *Paige* v. *Schenectady Railway Co.*, 178 N. Y. 102; *Fulton L., H. & P. Co.* v. *State*, 200 N. Y. 400; *Crill* v. *City of Rome*, 47 How. Pr. 398; *Jones* v. *Jones*, 1 How. Pr. [N. S.] 510.)

*Theodore L. Cross* for respondents. The deed of the colonial authorities known as the Cosby Manor grant (and which grant entirely covers the location of the premises involved in this action) is inclusive by express metes and bounds. The bed of the Mohawk river within the limits of the grant is included, and in addition to this inclusive description the words "rivers, rivulets, water courses," etc., are added, in confirmation of the intention of the crown to grant land under all such waterways within the expressed boundaries of the grant. (*Rogers* v. *Jones*, 1 Wend. 254; *Trustees of Brookhaven* v. *Strong*, 160 N. Y. 63; *Dermott* v. *State*, 99 N. Y. 107; *People ex rel.*

*Woodhaven Gas Co.* v. *Beehan,* 153 N. Y. 532; *Langdon* v. *Mayor, etc.,* 93 N. Y. 145; *Van Winkle* v. *Van Winkle,* 184 N. Y. 193; *Starr* v. *Child,* 20 Wend. 149; *French* v. *Carhart,* 1 N. Y. 96; *People* v. *Trinity Church,* 22 N. Y. 46; *Smith* v. *Bartlett,* 180 N. Y. 364; *Charles River Bridge Company* v. *Warren Bridge Company,* 11 Pet. 589; *People* v. *Paige,* 39 App. Div. 114.)

HISCOCK, J.   This is an action of ejectment to recover a parcel of land formerly lying in the bed of the Mohawk river within the present limits of the city of Utica.   Said parcel no longer lies in said bed, for, prior to 1907, under authority of the legislature proceedings were instituted and consummated to straighten the course of the river in the locality in question with the result that its channel now lies some distance from the premises in question, and it is conceded that in the course of or in connection with said proceedings any title which the state had to the present parcel was in the year last mentioned conveyed to and is now possessed by the defendant.

Plaintiffs necessarily assert in support of their right to recover possession of said premises that the state did not have title to the bed of the Mohawk river at the point in question at the time it attempted or purported to convey title thereto to the defendant.   They insist, on the contrary, that under the grant by King George of England to Warrell and others of the premises known as Cosby Manor and summarized in the foregoing statement of facts title to the premises in dispute was passed to said Warrell and his associates and from them by an unbroken chain of conveyances to the plaintiffs.

It is undisputed that the lands granted to Warrell and his associates abutted the Mohawk river on both sides of the premises here in dispute and also that the description by metes and bounds of the premises by said grant conveyed included the bed of the river and the premises in dispute.   I think it may also be stated without serious

question that there is a complete chain of title to said premises from Warrell and his associates to the plaintiffs. It is true that appellant's counsel now appears to question or criticise somewhat this chain of title; but it was assumed by the trial judge and by the dissenting justices at the Appellate Division that there was such chain and I am not inclined to view very seriously the belated claim of defects.

Assuming such a chain of title, however, it is insisted in behalf of the defendant that the patent which has been referred to did not convey title to the bed of the river, and that subsequently the state became invested with the title thereto which still remained in the king of England at the time of the Revolution. This claim involves briefly a review of the law in respect of the effect of conveyances upon the title to the bed of the Mohawk river.

It has been frequently held that the title to the bed of the Mohawk river generally has not passed to grantees of riparian lands, but has remained in the People. This result has been secured by the application of two slightly different, or perhaps, to speak more accurately, supplementary theories. One of these has been that in grants made to settlers of the Mohawk valley under the Dutch government, the bed of the river was excepted, and, therefore, passed as unconveyed lands to Great Britain, and still later to the State of New York. (*Smith* v. *City of Rochester*, 92 N. Y. 463, 481; *Fulton L., H. & P. Co.* v. *State of New York*, 200 N. Y. 400, 413.)

The other theory is the one adopted in the leading case of *People* v. *Canal Commrs.* (33 N. Y. 461), where in an elaborate opinion, and after an exhaustive discussion of authorities, the court reached the conclusion that the rule of the English common law, which treated as navigable and public only those streams where the tide ebbed and flowed, was not applicable to our country; that the proper test was that of actual navigability, and that where a stream was actually navigable, as the Mohawk

was, it was subservient to the public use, and, therefore, that a conveyance bounded by or upon it would carry only to the bank and not to the center of the stream as in the case of non-navigable streams.

But neither theory, and no theory, so far as I am aware, has ever held that the sovereign power might not if it saw fit convey the title to the bed of a stream subject to public purposes and uses, or that such a conveyance if made by the English sovereign before the separation of the colonies was not to be recognized. On the contrary, it has been repeatedly held that this might and should be done. (*Rogers* v. *Jones*, 1 Wend. 237, 262; *People* v. *Canal Commrs.*, 33 N. Y. 461, 489; *Commrs. of Canal Fund* v. *Kempshall*, 26 Wend. 404; *Lewis Blue Point Oyster C. Co.* v. *Briggs*, 198 N. Y. 287; *Trustees of Brookhaven* v. *Strong*, 60 N. Y. 56; *De Lancey* v. *Piepgras*, 138 N. Y. 26, 36; *Smith* v. *Bartlett*, 180 N. Y. 360, 365.)

We, therefore, come to the question whether King George having title to the bed of the stream did intend to and did convey the same subject to public rights and uses to Warrell and his associates.

On the first branch of this question there can be no doubt of course that the sovereignty of Great Britain had been extended over the territory including the Mohawk river at this time, for the patent was executed long after the English had terminated by conquest the possession and sovereignty of the Dutch and had succeeded to their rights. But even so, we are asked for two reasons to hold that the grant of the English sovereign did not include the bed of the river.

In the first place, referring to the certificate of Governor Cosby, wherefrom it appears that Warrell and his associates had secured whatever rights "Sundry Germans" and others had acquired in the premises of which they were seeking a grant, it is urged that the patent was simply a confirmatory conveyance and added nothing

to what had been acquired from the Germans, and this does not appear to have included the bed of the stream.

I do not think that the grant had any such narrow force, but that it was sought and executed as a conveyance by the English sovereign as the substantial proprietor of the premises in which possibly the Germans from whom Warrell and his associates took their prior conveyances had acquired some merely possessory rights of a temporary character. There is nothing in the patent or the certificate appended thereto to indicate the source or character of the rights which the Germans had acquired or that they had come from the Dutch government. In *Russell* v. *Schuyler* (22 Wend. 277, 278) it is stated that they were rights purchased of the Indians, and if so they did not amount to or constitute a conveyance of the land. *Trustees, etc., Town of Southampton* v. *Mecox Bay-Oyster Co.*, 116 N. Y. 1, 7.)

These rights whatever they were, under a license from Governor Burnet, had been purchased in "his late Majesty's name," and the act of the representatives of the British sovereign in "setting out" for Warrell and his associates the premises of which the latter desired a grant, and the character of the patent itself whereby, amongst other things, the grantees were charged a substantial yearly rent, all indicate that this patent was conveying the real title and that it was not a mere confirmation of something which had already been substantially accomplished. (*Canal Appraisers* v. *People*, 17 Wend. 571, 588.)

Furthermore, even if the original rights secured by Warrell and his associates from the Germans had consisted of a Dutch grant which excluded the bed of the river, the subsequent English grant would have had the effect to convey title to such bed if its terms included the same. (*Hinckel* v. *Stevens*, 165 N. Y. 171, 174.)

In the second place it is argued and was thought by the trial judge that because the patent described the

premises as "lying and being * * * on both sides of the Mohawk river," there was thereby evidenced an intent not to include the intervening bed. I think, however, that this view gives an undue importance and significance to this descriptive feature in view of the further description of the entire tract by definite boundary lines which not only included the bed of the stream but which also included an amount of land corresponding with remarkable accuracy in the case of so large a tract to the acreage called for by the grant. It was not at all unnatural that the general location of the land should be fixed by reference to the conspicuous landmark of that country and by statement of the fact that it extended on both sides of the river, but this general location of the tract ought not to be construed as overruling definite and exact boundary lines or as excluding land which was included within those boundary lines. Such boundary lines were controlling and carried title to the bed of the stream subject, as has already been stated, to public rights and uses. (*Hinckel* v. *Stevens*, 165 N. Y. 174; *People* v. *Canal Appraisers*, 33 N. Y. 461, 500; *Lowndes* v. *Town of Huntington*, 153 U. S. 1, 18; *Langdon* v. *Mayor, etc.; of N. Y.*, 93 N. Y. 129, 145; *Fulton L., H. & P. Co.* v. *State of N. Y.*, 200 N. Y. 400; *Rogers* v. *Jones*, 1 Wend. 237, 255; *De Lancey* v. *Piepgras*, 138 N. Y. 26, 36; *Smith* v. *Bartlett*, 180 N. Y. 360, 365.)

In my opinion the judgment appealed from should be affirmed, with costs.

CHASE, HOGAN and POUND, JJ., concur; WILLARD BARTLETT, Ch. J., CUDDEBACK and CARDOZO, JJ., dissent.

Judgment affirmed.