SAMUEL A. DANES et al., Respondents, v. THE STATE OF
NEW YORK, Appellant.

Riparian rights — Mohawk river — barge canal — the rule that
the owner of the contiguous bank of a non-tidal river owns to its
center is not applicable to the Mohawk river — owners of
uplands contiguous to such river which have been taken for the
barge canal are not entitled to compensation for the land con-
nected with the uplands under and to the center line of the river.

1. New York as a proprietary or crown colony or as a state has
not at any time adopted or administered in its complete integrity
the common law of England. While it has been from the beginning
the fundamental law, it has yielded to the local conditions and cir-
cumstances of the new territory and its people. The colonial legis-
lation and judicial decisions and the state constitutions recognized
and applied the general principle and determined what parts of it
should be adopted.

2. The law of New York has consistently declared through legisla-
tion and judicial decisions that the rule that the owner of the con-
tiguous bank of a non-tidal navigable river owns to its center is not
applicable to the Mohawk and parts of the Hudson.

3. The fact that a grant of land was made by the British crown
before the people of the state became its successor in the title is
not of any weight in the determination of this question. Hence,
the owners of lands contiguous to the Mohawk river taken for
the barge canal, are not entitled to compensation as owners for the
land connected with those uplands under and to the center line of
the river. The question as to what damages, if any, have been
sustained by the upland owners by reason of the interference with
their ordinary riparian rights through such taking, however, is
remitted to the Court of Claims. (*People ex rel. Loomis* v. *Canal
Appraisers*, 33 N. Y. 461, followed; *Williams* v. *City of Utica*, 217
N. Y. 162, distinguished.)

*Danes* v. *State of New York*, 169 App. Div. 443, modified.

(Argued May 4, 1916; decided October 3, 1916.)

APPEAL from a judgment of the Appellate Division of
the Supreme Court in the third judicial department,
entered October 4, 1915, affirming a determination of the
Board of Claims in favor of the claimants.

The nature of the claim and the facts, so far as material, are stated in the opinion.

*Egburt E. Woodbury*, Attorney-General (*Wilber W. Chambers* and *Joseph P. Coughlin* of counsel), for appellant. The title to the bed of the Mohawk river at the place in question is in the state, and these claimants, as riparian owners, do not take to the center of the stream nor have they any rights in the land under water of the Mohawk river. (Hill's Waterways & Canal Construction, 10, 17, 24, 25, 26, 28, 41; *People* v. *Canal Appraisers*, 33 N. Y. 461; *Crill* v. *City of Rome*, 47 How. Pr. 398; *Jones* v. *Jones*, 1 How. Pr. [N. S.] 510; *People* v. *Page*, 39 App. Div. 110; *Ten Eyck* v. *Town of Warwick*, 75 Hun, 562; *Hooker* v. *Cummings*, 20 Johns. 90; *Lowber* v. *Wells*, 13 How. Pr. 454; *Ex parte Tibbits*, 5 Wend. 423; *Smith* v. *City of Rochester*, 92 N. Y. 463; *F. L., H. & P. Co.* v. *State*, 200 N. Y. 400.) Not only is the title of the state supported on the ground that the Mohawk river is excepted from the common-law doctrine, but also on the ground that the state has assumed to own the bed of the Mohawk river from the earliest times with the acquiescence of the riparian owners. (*Mayor, etc.,* v. *Manhattan Ry. Co.*, 143 N. Y. 1.)

*De Witt W. Ostrander* for respondents. The English common law, as it prevailed at the time of the English grant, from Queen Ann to Cornelius Swits in 1708, under which title to the premises therein described vested in the patentee, is the only law that operated upon the grant and regulated the quality and extent of title conveyed thereby. (3 Winsor's Hist. of America, 388–406.) The first Constitution of this state (1777) prohibits interference by the state with " any grants of land within this state, made by the authority of said king or his predecessors " prior to October 14, 1775; therefore, the quality and extent of " any grants of land within this state made by the

1916.]                    Opinion, per COLLIN, J.                    [219 N. Y.]

authority of said king" must be determined by the rules of law that operated upon the grant at the time the grant was made and title passed under it. (N. Y. Const. of 1777, § 36.) Under the common law of England the original grant carried title to the thread of the stream. (*People* v. *Platt*, 17 Johns. 205; *Varick* v. *Smith*, 9 Paige, 553; *Ex parte Jennings*, 6 Cow. 537; *Comm.* v. *Kempshall*, 26 Wend. 413; *De Camp* v. *Johnson*, 16 App. Div. 531; *C. & St. L. R. R. Co.* v. *Valentine*, 19 Barb. 489; *Walton* v. *Taft*, 14 Barb. 218; *Matter of State Res. Comm.*, 37 Hun, 545; *Canal Comm.* v. *People*, 5 Wend. 452; *Fulton L., H. & P. Co.* v. *State*, 65 Misc. Rep. 273.) The Mohawk river at the point in suit is not and never has been, within historical times, a navigable stream, in law or in fact, in its natural state. (Hill's Waterways & Canal Const. 10–26; *People* v. *Platt*, 17 Johns. 195; *Fulton L., H. & P. Co.* v. *State*, 65 Misc. Rep. 263.) The grant to Cornelius Swits was an express grant by the English sovereign who had the right and power as proprietor of the soil to convey the bed of the stream to Swits, the title to which has passed to the respondents. (*People* v. *Trinity Church*, 22 N. Y. 44; *People* v. *Clark*, 9 N. Y. 359; *Canal Comm.* v. *People*, 5 Wend. 423; *Walton* v. *Taft*, 14 Barb. 218; *Lord* v. *Comm.*, 12 Moore P. C. 473; *Canal Trustees* v. *Haven*, 1 Peck, 554; *Van Winkle* v. *Van Winkle*, 184 N. Y. 193; *Mott* v. *Mott*, 68 N. Y. 246; *Wilcox* v. *Bread*, 157 N. Y. 713; 92 Hun, 9.)

COLLIN, J.  The question presented here by the arguments of counsel is, are the respondents entitled to have added to the sum of the compensation awarded for land owned by them in Schenectady county, contiguous to the Mohawk river and taken for the barge canal, a sum as compensation for the land, connected with those uplands, under and to the center line of the river. The determination of the Board of Claims awarded the additional compensation by this language: "And that said

claimants are entitled to recover from the State of New York one thousand dollars, in addition to the above sum of $8,050, by reason of the appropriation by the State of the land comprising the bed of the Mohawk River to the thread or center of the stream opposite the premises of claimants as shown in the appropriation maps; * * * said award of one thousand dollars ($1,000) being intended to cover all other rights growing out of the ownership of said land in the bed of the Mohawk River and all riparian rights appurtenant to the premises appropriated." The Appellate Division by a divided court affirmed the determination.

The appropriation maps of the state under which, pursuant to section 4 of the Barge Canal Act (Laws of 1903, ch. 147) title to the uplands of the claimants was acquired by the state, bounded the uplands by, and did not show any lands within or under, the river. The state, therefore, did not directly and expressly take any of the bed of the river. The claim of the respondents that the state has, nevertheless, appropriated the bed of the river to its center, touching the lands described in the maps, rests upon two assertions: The one, that the appropriation of the bank of the river was, by operation of law, the appropriation of the contiguous bed to its center; the other, that the appropriation of the bank was a taking of the bed, because it absolutely destroyed, as to the respondents, all means of access to and potential uses of it and of the waters flowing over it.

In connection with and as an essential element of the first assertion, it is further asserted that the river is non-navigable — an assertion we do not accept. We hold, for the purposes of this action, that it is conclusively established by colonial and state legislation and judicial decisions that it is navigable. This conclusion is adequately supported by a reference to certain of the decisions. (*People ex rel. Loomis* v. *Canal Appraisers*, 33 N. Y. 461; *Canal Appraisers* v. *People*, 17 Wend. 571;

*Williams* v. *City of Utica,* 217 N. Y. 162.) In order to be navigable, it is not necessary that it should be deep enough to admit the passage of boats at all portions of the stream. (*St. Anthony Falls Water Power Company* v. *St. Paul Water Commissioners,* 168 U. S. 349; *Morgan* v. *King,* 35 N. Y. 454.) It is obvious, moreover, that neither of the two assertions is well founded or tenable in case the respondents had not title to or ownership in the bed of the river. Whether or not they had the title or ownership is, therefore, a fundamental question.

The source of the respondents' title is a grant, describing the uplands and bounding them by the river, from Queen Anne in October, 1708, and, therefore, before the organization of the state and the succession of its people to all the rights of the British crown to lands within its territorial jurisdiction. The case presents the question, whether or not the original royal grant carried title from the English sovereign to the grantee running to the center of the Mohawk river, when the grant fixed the river as a boundary of the land so granted. The rule of the common law of this state (enlarging or extending that of England) that the title to the bed of navigable rivers, not tidal, passed to the grantees of the adjacent banks has not heretofore been applied to the grants of the banks of the Hudson and Mohawk rivers. (*Williams* v. *City of Utica,* 217 N. Y. 162; *Fulton Light, Heat & Power Co.* v. *State of New York,* 200 N. Y. 400, 413; *Smith* v. *City of Rochester,* 92 N. Y. 463; *People ex rel. Loomis* v. *Canal Appraisers,* 33 N. Y. 461.) Thus much the respondents do not attempt to refute or avoid. Their assertions and arguments are: The grant by Queen Anne was in 1708. The lands granted were located above the ebb and flow of the tide and were bounded by the river. The effect and extent of the grant is controlled and defined by the common law of England as it then existed and was administered in England, and, thereby, all fresh water rivers were unalterably declared

non-navigable and the title of their beds was in the owners of the adjacent banks, the owners of each side taking to the center, or *usque ad filum aquæ.* The royal grant, therefore, conveyed to its grantee the bed of the river connected with the uplands to its center. It follows, necessarily, that the British crown, having granted in 1708 the bed of the river to the predecessor in title of the respondents, could not have transferred or surrendered title to it to the people of the state.

The assertions and arguments ignore or thrust aside two established facts: The one, that New York, as a proprietary or crown colony or as a state has not at any time adopted or administered in its complete integrity the common law of England. While it has been from the beginning the fundamental law, it, in accordance with a general principle, potent in extending and maintaining the imperial rule and power of Great Britain, yielded to the local conditions and circumstances of the new territory and its people. The charter of March 12, 1664, by King Charles II to his brother James, Duke of York, authorized the establishment of laws, orders, ordinances, directions and instruments "not contrary to, but as neare as conveniently may be Agreeable to the Laws, Statutes & Government of this Our Realme of England." The colonial courts exercised a sovereign authority in determining what part of the common law of England was to be adopted by the colony. The colonial legislation and judicial decisions and the state constitutions recognized and applied the general principle. The other fact is, that the law of New York, as a colony and as a state, has consistently declared through legislation and judicial decisions that the rule that the owner of the contiguous bank of a non-tidal navigable river owns to its center, is not, for certain exceptional reasons, applicable to the Mohawk river and parts of the Hudson river. In *Canal Appraisers* v. *People* (17 Wend. 571, 609) the opinion of Senator Beardsley states: "The evidence establishes

the fact most conclusively, that not only the colonial government but the state authorities have considered the *bed* of the *Mohawk* as belonging to the public and not to individuals, or that the common-law principle, that the owner of the adjacent lands is entitled to the bed of the river, has not been considered as applicable to the *Mohawk*." In *Fulton Light, Heat & Power Company* v. *State of New York* (200 N. Y. 400, 413) Judge Gray, in considering the common-law rule of this state as to riparian ownership of the beds of fresh-water streams, said: "In our state, there were to be considered, in applying the common-law rule (of England), the extent to, which our fresh-water rivers and lakes formed territorial boundaries and the nature of the title acquired under the laws of the state, to whose dominion England had succeeded. In the former case, the rule was, clearly, inapplicable and, in the other case, as I understand the result of the decisions, two of our rivers formed exceptions to the general rule. The part of the Hudson river above the ebb and flow of the tide and the Mohawk river, a fresh-water stream, in grants made to settlers under the Dutch government, were excepted and, upon the English succession, the beds of those waters, never having been conveyed, vested in the crown, as lands not theretofore granted. As to those rivers, the people of this state have ever asserted title, as to unappropriated lands. * * * I know of no exceptions in this state to the common-law rule (of this state) of riparian ownership of the beds of fresh-water streams, where not constituting boundary lines, other than the two rivers referred to. If not affected by situation, or by derived title, there is no good reason why the common-law rule should not obtain with respect to our fresh-water rivers."

What we have written supports the following conclusion: (a) Grants by or in behalf of the States General of the United Netherlands, of lands bounded by the Mohawk

river did not, under the Roman-Dutch law by which they were ruled, convey any part of the bed. (b) Upon and under the capitulation of the government of the States General, or the Dutch, to the English, the title of the bed of the Mohawk river passed to the British sovereignty, and thence (except in so far as it had been conveyed), to the people of the state of New York. (c) Throughout the history of New York it has been uniformly adjudged, when the occasion has arisen for a judicial determination, that grants of land bounding on the Mohawk river did not convey beyond the high-water line.

The fact that the grant was made by the British crown and before the people of the state became its successor in the title is not of any weight. The colony as well as the state had legislative bodies and courts. The common law of England has from the founding of the colony been applied only so far as deemed applicable to the condition of the territory and the situation and circumstances of the colony. The royal grants, whether made by the crown itself or its representatives, were made with reference to and to be regulated by the common law as adopted and administered in the colony. The exceptional conditions causing the common law of the colony and state to include the rule that the beds of the Mohawk and of the Hudson rivers were public domain, the title to which is in the state, existed and were recognized from the birth of the colony. The time of the grant did not beget them or knowledge of them. They sprang from natural physical conditions which were as obvious to the legislators and judicial officers of the colonists as to their successors. True it is, that the extent and effect of the grant must be determined by the rules of law that governed it when made, but those rules were those of the colony and not those of England. In view of the decisions, further original reasoning is unnecessary. In *People ex rel. Loomis* v. *Canal Appraisers* (33 N. Y. 461) the extent and effect of a grant, a boundary of which was the

river, was to be determined. Neither the printed record nor the opinion in the case states with certainty the source or date of the sovereign grant. The record discloses that it was a "patent granted by the government of the country, dated to John Jost Herchimer and Hendrick Herchimer, and their heirs and assigns forever." The relator in his points in this court said: "The facts as found by the special verdict are as follows: At an early day, and before the Revolutionary War, a tract of land lying on the south side of the Mohawk river, at Little Falls, was granted by patent to John Jost Herkimer and Hendrick Herkimer, their heirs and assigns forever." The records of the office of the secretary of state, to which we may resort for additional facts, inasmuch as the existence of the patent is established, disclose that the patent was by King George the Second, and was executed April 13, 1752. The relator's claim to the water of the river was based upon the fact, as alleged by him, that he was the owner of the bed of the river, *usque ad medium filæ,* by virtue of the grant. A point presented to this court was: "When the patent under which the relator claims was issued, the common-law rule prevailed in the colony of New York, and the patentees and their assigns acquired title to the center of the stream." This court held in a thorough and irrefragable opinion that the claim of the relator was erroneous, and that the title to the bed of the Mohawk river and to the water flowing over it was in the people or state. Neither fact nor legal principle differentiates this case from that. In the *Tibbits Case* (5 Wend. 423; 13 Wend. 355; 17 Wend. 571; 19 N. Y. 523) the source of the grant under consideration was a patent of May 20, 1704, and by it the land was bounded by the Hudson river. In *People* v. *Page* (39 App. Div. 110) the source of the title under consideration was a patent of 1685 and the Mohawk river was a boundary of the land granted. In each case it was held that the title to the

bed of the river was in the people.    Under the established law of this state the respondents here did not own the bed of the Mohawk river as claimed by them.

Our decision in *Williams* v. *City of Utica* (217 N. Y. 162) is in no wise inconsistent with the law, because the basis of that decision was an express and direct original grant of the bed of the river.

From the language of the determination of the Board of Claims, we are uncertain whether or not the Board intended to find a damage to the ordinary riparian rights of the respondents by reason of the taking of the land between their remaining lands and the river.    That part of the determination awarding the sum of one thousand dollars, in addition to the eight thousand and fifty dollars, should be reversed, with costs in the Appellate Division and this court, and the matter remitted to the Court of Claims to determine and award the respondents the damages sustained by them, if any, by reason of the interference with their ordinary riparian rights through such taking.

Willard Bartlett, Ch. J., Chase, Cuddeback, Cardozo and Pound, JJ., concur.

Judgment accordingly.