OPINION OF THE COURT
 

 Smith, J.
 

 The issue here is whether Supreme Court had discretion to
 
 *78
 
 award less than 9% interest on a judgment against the New York City Housing Authority. In a personal injury claim brought against the Housing Authority, plaintiff alleged that the floor in a building maintained by defendant where she fell was "wet and slippery and strewn with papers and debris.” At trial, a jury found in plaintiff’s favor and awarded her (1) $300,000 for past pain and suffering; (2) $950,000 for future pain and suffering; (3) $2,680 for loss of earnings to date; (4) $5,968 for medical expenses to date; and (5) $35,000 for future medical expenses.
 

 Thereafter, plaintiff submitted a proposed judgment which provided that the rate of interest payable on the judgment should be 9% pursuant to CPLR 5004. Defendant submitted a counterproposal that the rate of interest should be fixed at 5.35% as a reasonable rate based on the average 52-week Treasury Bill rate established by the market for the 12-month period which ended on May 18, 1995 (the date of the verdict). Supreme Court denied the application and set the interest rate at 9% "as otherwise required by law.”
 

 The Appellate Division affirmed and stated that "[tjhere is no merit to defendant’s contention that the interest rate should have been determined as a matter of discretion under Public Housing Law § 157 (5) subject to a maximum of 9% ” (238 AD2d 125, citing
 
 Mirand v City of New York,
 
 221 AD2d 194). This Court granted leave to appeal.
 

 Resolution of this case requires an examination of the subject statute in the historical context of the CPLR provision which controls interest rates upon judgments generally. Prior to 1972, CPLR 5004 provided that "[ijnterest shall be at the legal rate, except where otherwise prescribed by statute.” The "legal rate” was then based upon the variable rate of interest on the loan or forbearance of money as set by the Banking Board, or, if no rate had been prescribed by the Banking Board, the rate of 6% per annum
 
 (see,
 
 1972 Report of NY Law Rev Commn, 1972 NY Legis Doc No. 65 [C], reprinted in 1972 McKinney’s Session Laws of NY, at 3226). However, in its review of the provision, the Law Revision Commission recommended that the rate be fixed at 6% based upon the following reasons: (1) 6% was the historical rate from 1879; (2) the interest rate for a loan or forbearance was not logically or necessarily related to the rate for judgments; (3) a fixed rate would facilitate the administrative act of entering judgments with interest "without possible controversy over different rates for different periods;” and (4) the power of the Banking Board to set such rates was due to
 
 *79
 
 expire later that year. Accordingly, in 1972, CPLR 5004 was amended to set a fixed interest rate on judgments at "six per centum per annum” (L 1972, ch 358).
 

 However, in the years that followed, interest rates soared in an inflationary market. The 1981 Report of the Advisory Committee on Civil Practice noted reports where defendants had exploited the system by investing and accruing interest on funds which would otherwise have been used to pay judgment creditors (1981 McKinney’s Session Laws of NY, at 2658). Increased returns were facilitated through such delaying tactics as "the prosecution of unmeritorious appeals and eschewing reasonable settlements” (Mem of Assemblyman Goldstein, 1981 NY Legis Ann, at 148). Although arguments had been made "to reinstate the market rate under CPLR 5004” (1981 McKinney’s Session Laws of NY, at 2658;
 
 see also,
 
 Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 5004), the Advisory Committee then recommended increasing the fixed rate payable on judgments from 6 to 9%. The recommendation was enacted in 1981
 
 (see,
 
 L 1981, ch 258) and the rate has remained unchanged since. Through all of its variations, however, the rate set forth in CPLR 5004 has only applied "except where otherwise provided by statute” (CPLR 5004).
 

 For example, when the "legal rate” of interest was applicable to certain judgments under CPLR 5004 prior to 1972, statutes which controlled the proper rate of interest to be charged upon judgments entered against certain municipal corporations provided that interest " 'shall not exceed four per centum per annum’ ”
 
 (People ex rel. Emigrant Indus. Sav. Bank v Sexton,
 
 284 NY 57, 61, quoting General Municipal Law § 3-a). We held that such a provision "mandates no particular rate” of interest but merely imposes a limit upon a court’s long-held authority "to determine in accordance with legal rules and principles whether or not interest should be directed to be paid and the rate thereof’
 
 (People ex rel. Emigrant Indus. Sav. Bank v Sexton,
 
 284 NY, at 61). Similar reasoning was applied to Public Housing Law § 157 which contained identical language
 
 (see, Futia Co. v Schenectady Mun. Hous. Auth.,
 
 33 AD2d 591 ["While CPLR 5004 states that interest is to be at the legal rate, unless otherwise provided, section 157 so provides”]).
 

 As noted above, even when the Legislature amended CPLR 5004 to set a fixed rate on judgments generally, that provision remained applicable "except where otherwise provided.” The "shall not exceed” qualifying language of statutes such as Pub-
 
 *80
 
 lie Housing Law § 157 and General Municipal Law § 3-a was left unchanged. These provisions were only amended to increase the upper limit to make it equivalent to the new 9% rate applicable to other judgments
 
 (see,
 
 L 1982, ch 681, amending General Municipal Law § 3-a; Public Housing Law § 157). The amendment resulted in a substantial increase in some cases. For example, the maximum interest rate in Public Housing Law § 157 (5) increased from 3% to 9% on judgments against the Authority. Not surprisingly, municipalities and their representatives opposed the amendment stating that cities, and their taxpayers, could not afford the additional costs which would result from the higher interest rates
 
 (see, e.g.,
 
 letter dated July 9, 1982 from Edward I. Koch, Mayor of City of New York by Legislative Representative Margaret L.W. Boepple; Mem in Opposition dated May 19, 1982 by Donald A. Walsh, General Counsel to NY Conference of Mayors and Municipal Officials). Such arguments did not forestall the passage of the bill. As stated in the Sponsors’ Memorandum, "businesses and individuals that have legitimate claims against public entities have been placed in a tremendously unfair position in terms of being compensated in any sort of reasonable or just way for interest incurred or lost due to nonpayment or nonsettlement of just claims” (Mem of Assemblyman Walsh in Support, 1982 NY Legis Ann, at 227). However, there is no basis to conclude that the legal principles applicable to the unchanged portion of the statutes were different
 
 (see, Carson v New York City Health & Hosps. Corp.,
 
 178 AD2d 265, 266 [General Municipal Law § 3-a (1) sets a "maximum upper limit without mandating 9% as the only rate that can be charged”]).
 

 Public Housing Law § 157 (5) "otherwise provides” that "[t]he rate of interest to be paid by an authority upon any judgment or accrued claim against the authority shall not exceed nine per centum per annum.” The clear implication of the statutory text, as read in conjunction with our precedents, is that 9% is a not-to-be-exceeded maximum, instead of a statutorily fixed, rate of interest to be imposed on judgments against the Housing Authority. Thus, contrary to the ruling of the Appellate Division, a court may, in its discretion, impose a rate of interest lower than 9% pursuant to Public Housing Law § 157 (5). Such discretion should be exercised upon remittal.
 

 Appellant also argues that the interest rate "should be based on the assumption that a reasonable plaintiff would have placed the verdict or judgment amount in a relatively safe
 
 *81
 
 investment, such as a Treasury security.” We decline to endorse such reasoning and limit the court’s discretion upon remittal. We only note that the Legislature has set 9% as the rate of interest to be generally imposed so that amount is presumptively fair and reasonable, notwithstanding any contemporaneous grant of judicial discretion to impose a lesser amount
 
 (cf., City of Buffalo v Clement Co.,
 
 28 NY2d 241, 266 ["we have consistently viewed the statutory rate (for the payment of interest) as presumptively reasonable”]). The fact that another interest computation may also be "reasonable” does not mandate the selection of that rate in an exercise of discretion.
 

 Accordingly, the order of the Appellate Division should be modified, with costs to appellant, and the case remitted to Supreme Court for further proceedings in accordance with this opinion and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Levine, Ciparick and Wesley concur.
 

 Order modified, etc.