OPINION OF THE COURT
John P. Lane, J.
Following a damage trial, Judge Thomas P. McMahon, now retired, discounted future damages to the date of the parties’ expert witness damage calculations, with interest from July 13, 1990, the date of the Appellate Division decision finding liability. His amended structured judgment was affirmed by the Appellate Division (213 AD2d 991). Holding that the award of future damages should have been discounted to the date of the liability determination, the Court of Appeals reversed the order of the Appellate Division and remitted this action for further proceedings in accordance with its memorandum opinion (87 NY2d 1011).[1]
Since then, the parties have engaged in discussions, have had proceedings in the Surrogate’s Court of Erie County and here regarding possible settlement and have submitted 20 affidavits and numerous letters concerning the remittitur and claimants’ right to recover interest. In response to entreaties by the guardian ad litem appointed by Surrogate Joseph S. Mattina to expedite receipt by Ms. Kirisits of the benefits of *542 her award, the parties stipulated to a partial judgment directing immediate payment of $1,000,000. On May 30, 1997 claimants’ attorneys received two checks from defendant, one for $1,000,000 and the other for $12,575.58 representing interest at 9% on the partial judgment.
The State has raised two interest-related issues which claimants argue are either not within the scope of the remittitur or foreclosed under the doctrine of law of the case. First, it contends that interest should accrue on future damages only if they are not paid on time. In that regard, Thomas R. Kershner, defendant’s economist, equates postverdict interest to a late penalty on a home mortgage payment, concluding that claimants should collect interest only on past due future damages. The Court of Appeals noted that the judgment appealed from included postverdict interest on the future damage component of the judgment (87 NY2d, supra, at 1013). It does not appear that the interest award was challenged in that Court.[2] Assuming the issue is open, defendant’s argument ignores the unambiguous language of CPLR 5002 and the fact that statutory interest is simply the cost of using another person’s money chargeable as of the date that liability is established, not a penalty (see, Love v State of New York, 78 NY2d 540). As defendant became liable for the full amount awarded as of July 13, 1990, interest accrues from then on all future damages awarded to claimants (see, Silvestri v Smallberg, 88 NY2d 1004, 1005; Rohring v City of Niagara Falls, 84 NY2d 60, 68-70; Johnston v Joyce, 192 AD2d 1124, 1126).
The State also contends that claimants are not entitled to 9% interest, the rate fixed in the amended judgment. Following the remittitur strictly (see, Eikenberry v Adirondack Spring Water Co., 148 AD2d 664, lv dismissed 74 NY2d 842, 76 NY2d 935) and under the law of the case doctrine (see, Schrader v Carney, 198 AD2d 779, 780, lv dismissed 83 NY2d 801), the rate of interest issue is not open unless it can be said to be inextricably tied to the award of recalculated future damages (see, Hohenberg v 77 W. 55th St. Assocs., 118 AD2d 418, 421, lv denied 68 NY2d 604, lv dismissed 68 NY2d 753). This is certainly the case, as the clerk must compute prejudgment interest (see, CPLR 5002) and a fixed rate no longer exists for cases governed by State Finance Law § 16 (see, Rodriguez v New York City Hous. Auth., 91 NY2d 76). Furthermore, the *543 amended judgment only established the prejudgment interest rate. As a dispute concerning the rate of postjudgment interest will likely arise before the judgment to be entered is fully satisfied, that rate also ought to be determined now in the interest of judicial economy and to end the litigation between the parties.
CPLR 5004 provides that interest shall be allowed at the rate of 9% except where otherwise provided by statute. State Finance Law § 16 sets the same rate as the maximum interest to be paid by the State upon any judgment. Thus, this court is required to determine the appropriate interest rate (Rodriguez v New York City Hous. Auth., supra). It is clear from the Rodriguez decision that 9% is a presumptively fair and reasonable rate. Moreover, defendant evidently did not challenge this rate on appeal and accepted it as the appropriate percentage when it paid the partial judgment last May. Nonetheless, the State now urges that claimants be paid interest at the rate of either 5.341% the equivalent coupon issue yield based upon the average price accepted for 52-week Treasury bills auctioned on January 6, 1998 or 5.235% the average equivalent coupon rate for 52-week Treasury bills sold from June 28, 1990 to the end of January 1998. The complex and lengthy history of this case does not support using a rate based on the sale of short-term government investments in January 1998 or a seven-plus year average rate for such investments. Unlike the typical Supreme Court jury trial situation, it is not unusual in the Court of Claims for there to be a relatively lengthy delay between a liability determination and an assessment of damages on the claim. In the case at bar, appellate proceedings and the added complexity imposed by CPLR article 50-B have further expanded the gap between the date of liability and final entry of judgment to almost eight years, making reliance on short-term investment yields a singularly inappropriate method for arriving at a fair and equitable rate of return for a large sum of money legally belonging to claimants as of the earlier date. Even for a case burdened with fewer procedural difficulties than this one, short-term rates are not appropriate given the reasonable expectation in this court of significant delays between the liability and damages determinations and the eventual entry of judgment. It is worthy of note that the defendant in Rodriguez urged the court to use the average Treasury bill rate for the 12 months preceding the date of the verdict. Here the rates for sales nearest the date of the liability finding aver *544 age about 8% (see, exhibit A).[3] Determining the interest rate based on economic conditions at the time of the liability determination comports with the policy requiring the damage award to be discounted as of that date. Furthermore, nothing in the CPLR or the State Finance Law justifies selection of a rate reflecting economic conditions prevailing almost eight years after liability is established. Moreover, nothing in those statutes or the Rodriguez opinion supports defendant’s suggestion that interest be calculated annually using rates based on auctions of 52-week Treasury bills occurring nearest to the anniversary of the liability determination.
According to claimants’ economic expert Ronald Reiber, a reasonable person seeking to place the amount awarded to claimant in risk-free investments would not select 52-week Treasury bills. To support his opinion, he refers to the Wall Street Journal for July 2, 1990 which shows the availability of Treasury bonds and notes with a range of maturities into the next century providing an average yield of about 8.5%. Furthermore, his analysis of returns on conservative stock investments since 1990 suggests that funds so invested could have produced a 15.66% average annual rate of return. Contrary to the State’s argument, Ms. Kirisits’ recovery could have been invested by her guardians in common stocks (see, EPTL 11-2.2, 11-2.3; SCPA 1723), not just the investments mentioned in CPLR 1206. Assuming that a diversified risk-balanced portfolio would have been chosen (see, Matter of Janes, 90 NY2d 41, 49-54), an option relevant to the interest rate issue (see, Rodriguez v New York City Hous. Auth., 91 NY2d, supra, at 80-81), a return of 9% is well below what careful guardians, adhering to the prudence rules in effect from the date of the liability determination, would have achieved on behalf of Sherilynn Kirisits. All things considered, the fair and reasonable interest rate in this case is 9% and that rate shall be used for all interest calculations.[4]
The parties have agreed that 6.66% is the appropriate rate to use in discounting the future damages award. They also have agreed that those damages be discounted from March 16, 1993, the date of the first damages decision, to the date of the liability determination. The court has adopted claimants’ *545 submissions with some small adjustments in making the findings that follow. Using the agreed rate, the items of future damages awarded by Judge McMahon, less their respective shares of litigation expenses and collateral source payments, are discounted to July 13, 1990 and listed in column (a); those amounts reduced by their pro rata shares of the first $250,000 of such damages are listed in column (b):
Table 1
Discounted Future Damages
(a) (b)
Pain and suffering $1,253,325 $1,213,782
Lost earnings 501,330 485,513
Residential care to 2000 542,391 525,278
Residential care from 2001 5,066,362 4,906,518
Therapeutic expenses 208,046 201,482
Audiological evaluation 8,787 8,510
Hearing aids 40,781 39,494
Heel surgery 7,085 6,862
Leg braces 146,280 141,665
Brace adjustments 13,591 13,162
Joint surgery 140,042 135,624
Total $7,928,020 $7,677,890[5]
To determine attorneys’ fees allocable to the future damages, the amounts in column (b) are divided by the term of years fixed by Judge McMahon, increased by 4% annually and then reduced to the present values listed in column (c). Claimants’ attorneys are entitled to $1,154,583, one third of the total present value, which when deducted on a pro rata basis leaves the amounts in column (d) owing to claimants.
Table 2
Present Values of Future Damages and Net Award
(c) (d)
Pain and suffering $1,086,258 $ 724,172
Lost earnings 248,524 165,682
Residential care to 2000 417,140 278,094
Residential care from 2001 1,477,357 984,904
Therapeutic expenses 60,666 40,444
*546 Audiological evaluation 4,396 2,931
Hearing aids 20,399 13,599
Heel surgery 6,862 4,575
Leg braces 59,824 39,883
Brace adjustments 5,872 3,915
Joint surgery 76,457 50,971
Total $3,463,755 $2,309,170
The parties have requested that the new judgment be entered as of a current date rather than retroactively to the date of the amended judgment. As a consequence, the format of the judgment will be somewhat unusual. Since defendant has not yet made any periodic payments, it is necessary to determine the amounts that claimants would have received had payments started following entry of the amended judgment. They are listed in column (e).
Table 3
Past Due Future Damages
(e)
Pain and suffering $709,597
Lost earnings 14,545
Residential care to 2000 226,856
Audiological evaluation 738
Hearing aids 3,793
Heel surgery 4,575
Leg braces 5,349
Brace adjustments 654
Joint surgery 15,172
Total $981,279
The rest of the future damages shall be paid over the remainder of the respective terms fixed by Judge McMahon as follows:[6]
Pain and suffering
$290,523, with an initial monthly annuity of $8,863[7] beginning on April 13, 1998, *547 increasing at 4% on each August 13 thereafter, for a term of 2 years and 4 months or life, whichever is less;
Lost wages
$156,582, with an initial monthly annuity of $1,000 beginning on April 13, 1998, increasing at 4% on each January 13 thereafter, for a term of 26 years and 9 months;
Residential care to 2000
$139,481, with an initial monthly annuity of $4,872 beginning on April 13, 1998, increasing at 4% on each January 13 thereafter, for a term of 2 years and 9 months or life, whichever is less;
Residential care from 2001
$983,745, with a first year monthly annuity of $5,042 beginning on January 13, 2001, increasing at 4% on each January 13 thereafter, for a term of 54 years or life, whichever is less;
Therapeutic expenses
$40,388, with a first year monthly annuity of $207 beginning on January 13, 2001, increasing at 4% on each January 13 thereafter, for a term of 54 years or life, whichever is less;
Audiological evaluation
$2,197, with an initial monthly annuity of $9 beginning on April 13, 1998, increasing at 4% on each August 13 thereafter, for a term of 53 years and 4 months or life, whichever is less;
*548 Hearing aids
$11,298, with an initial monthly annuity of $47 beginning on April 13, 1998, increasing at 4% on each August 13 thereafter, for a term of 53 years and 4 months or life, whichever is less;
Leg braces
$35,904, with an initial monthly annuity of $147 beginning on April 13, 1998, increasing at 4% on each January 13 thereafter, for a term of 55 years and 9 months or life, whichever is less;
Brace adjustments
$3,456, with an initial monthly annuity of $14 beginning on April 13, 1998, increasing at 4% on each January 13 thereafter, for a term of 55 years and 9 months or life, whichever is less; and
Joint surgery
$41,402, with an initial monthly annuity of $189 beginning on April 13, 1998, increasing at 4% on each August 13 thereafter, for a term of 44 years and 4 months or life, whichever is less.
Judgment shall be entered for $1,704,976, the present value of an annuity contract that will provide for the payment of the remaining amounts of future damages in periodic installments according to the above schedule, requiring defendant to offer and guarantee the purchase and payment of such a contract.
Claimants contend that prejudgment interest on future damages should be paid in a lump sum, pointing out that otherwise Ms. Kirisits will not receive her full entitlement if she dies before the time periods for all installment payments expire. To hold otherwise would be inconsistent with the notion that damages are deemed known and become a fixed obligation as of the time liability is determined and that interest is properly charged against the present value of future damages from that date (see, Rohring v City of Niagara Falls, 84 NY2d, supra, at 68-70). Moreover, as interest is indisputably due now on attorneys’ fees based on that present value, it would be incongruous to deny Ms. Kirisits the same benefit. Therefore, the judgment to be entered shall further provide that claimants recover interest on $1,704,976 from July 13, 1990 to be paid in a lump sum, satisfying their entitlement to *549 prejudgment interest with respect to periodic payments to be made in the future.
Finally, judgment shall be entered for $2,944,065 representing the following items, plus interest from July 13, 1990, less $1,012,575.58 paid by defendant on the partial judgment:
Table 4
Lump Sum Awards
(f)
Past damages $ 506,356
Lump sum future damages 250,000
Past due periodic payments 981,279
Litigation expenses charged to future damages[8] 51,847
Attorneys’ fees on future damages paid periodically 1,154,583
Total $2,944,065

. Sherilynn Kirisits was in útero when her mother, Sheryl Kirisits, was involved in an automobile accident on a State highway in August 1975. After spending the next several months in a coma, Sheryl Kirisits died the day after Sherilynn was born. In an action brought by Sheryl’s estate, negligent maintenance of a guardrail by the State was found to be the cause of her injuries and death (Kirisits v State of New York, 107 AD2d 156). When Sherilynn was 10 years old, her adoptive mother and then guardian brought this action and sought partial summary judgment on the issue of liability on the ground of collateral estoppel. The motion was denied, but the Appellate Division reversed, granted the motion and remanded for a damage trial (Kirisits v State of New York, 163 AD2d 860). Ms. Kirisits’ adoptive mother died later and her current guardians were substituted.

. The Appellate Division approved an award of prejudgment interest from the date of the liability determination on future damages (213 AD2d 991, 992, supra).

. Exhibit A is a memorandum reporting the equivalent coupon issue yield for January 1998 and a report of 52-week Treasury bill sales since April 1982.

. As 9% is a presumptively reasonable rate, and the rates proposed by the State are not, the court has not considered any other percentage.

. The court recognizes that there is a $130 discrepancy in these figures. It is attributable to the methodology employed by claimants’ expert and is de minimis.

. The parties have further agreed that periodic payments for which he did not fix a starting date should have commenced on August 13, 1990, one month following the liability determination.

. Because of the complicated history of this case, and by agreement of the parties, the initial monthly payment for each subcategory of future damages other than residential care beginning in 2001 and therapeutic expenses will actually be made for a period of less than one year, but will be treated as the "first year” payment for purposes of making the calculations required by CPLR 5041 (e).

. Litigation expenses totaled $54,614 of which 94.934% was charged to future damages.