*648 OPINION OF THE COURT
Frank S. Rossetti, J.
On September 27, 2000, a number of papers were read on motion by defendant for modification of the structured judgment entered August 21, 2000 to reduce the postverdict and postjudgment interest payable thereunder. This motion is denied, in accordance with the following:
Following the liability and damages decisions herein (see, decision dated Dec. 10, 1996, affd 248 AD2d 592, and decision dated Jan. 13, 2000), the court conducted a conference on April 14, 2000 on the structured judgment to be entered (see, CPLR art 50-B) and then conducted a further conference and hearing there on May 19, 2000. At the conclusion of the latter, the parties stipulated to the attorneys’ fees percentage and discount rate (see, CPLR 5041 [c], [e]), and were directed to submit respective proposed judgments by June 30, 2000. Prior to said submission date, the parties further agreed to submit a single proposed judgment, but, on June 29, 2000, defendant’s attorney advised claimants that the State was essentially withdrawing its consent to the use of the statutory 9% rate for postverdict and postjudgment interest (see, CPLR 5002, 5003, 5004; State Finance Law § 16), based on a recent Court of Claims decision by Presiding Judge Susan Phillips Read (i.e., Auer v State of New York, 185 Misc 2d 254 [June 21, 2000]). In order to expedite the entry of judgment in this already extended action (the claim here was filed March 4, 1993), we directed said entry using the 9% interest rate, but provided defendant the opportunity to make the instant motion (see, order dated Aug. 2, 2000). The difference between said 9% rate and the rates proffered by defendant exceeds up to $1.5 million in postverdict interest alone (i.e., to Aug. 21, 2000; see, 187 Misc 2d 647, 648, supra; n 5, infra).
As indicated, the primary basis for the State’s motion is the decision in Auer v State (supra). In that case (which also involved a structured judgment), the court found in its discretion that the postverdict and postjudgment interest should be based on averages derived from specific Federal securities (i.e., one-year Treasury bills). The court there seemingly placed excessive reliance on Federal law[1] and inadequate reliance on the controlling New York State Court of Appeals decision in *649 Rodriguez v New York City Hous. Auth. (91 NY2d 76). In Rodriguez, the Court of Appeals reaffirmed that trial courts have the discretion to set postverdict and postjudgment interest rates for awards against government entities where specific statutes fix maximum interest rates for such awards (see, id., at 80). However, it specifically declined to endorse the defendant’s proposed assumption that a reasonable plaintiff would have placed his award only in a “relatively” safe investment, such as a Treasury security (see, id., at 80-81). The highest Court in this State refused to so limit the trial court’s discretion and noted (a) the legislatively set 9% rate “is presumptively fair and reasonable, notwithstanding any contemporaneous grant of judicial discretion to impose a lesser amount,” and (b) “[t]he fact * * * another interest computation may also be ‘reasonable’ does not mandate the selection of that rate in an exercise of discretion.” (See, id., at 81.) We believe the conclusion to be drawn from these holdings is that in exercising its discretion, a trial court should not circumscribe its deliberations to safe or basically riskless investments, such as Treasury securities (see, Pay v State of New York, 176 Misc 2d 540, 544; Matter of New York State Urban Dev. Corp. [42nd St. Dev. Project], 176 Misc 2d 772, 775-776). Admittedly, there may be times and circumstances when such investments may be entitled to predominant weight in making determinations as to the interest at issue, such as where government and bank obligations provide returns comparable to those of equity or other corporate securities (cf., e.g., Matter of City of New York [Brookfield Refrig. Corp.], 58 NY2d 532, 538). However, for a period encompassing one of the most extensive bull markets in this country’s history (see, Molinari v City of New York, 176 Misc 2d 523, 528), we think a total disregard of equity or any form of corporate securities is contrary to the holdings and intent of Rodriguez, and to the concepts of fairness and reasonableness, the indicated applicable principles in the subject determination (see, 187 Misc 2d, supra, at 648-649).
The purpose of postverdict and postjudgment interest is to provide the claimant with compensation for the loss of use of the money awarded from the date of verdict or decision to payment. (See, Love v State of New York, 78 NY2d 540, 544, 545.) There are actually three potential categories of interest in civil proceedings (i.e., preverdict, postverdict and postjudgment; see, CPLR 5001, 5002, 5003), and preverdict interest has been the subject of judicial decision much more frequently than the other two. Hence, even though such interest on accrual is not *650 awardable in the instant personal injury action (see, 10 Weinstein-Korn-Miller, NY Civ Prac U 5001.07), we believe the holdings thereon are helpful in indicating the standards applicable to the subject other interest determinations.[2] It has been opined that Rodriguez (supra) did not provide “guideposts” for the determination of the subject interest (see, Auer v State, supra, at 257), but, as noted, it does indicate that fairness and reasonableness are the overriding considerations. Rodriguez relies on and quotes an older Court of Appeals case in reaffirming long-held judicial authority to determine interest rates “in accordance with legal rules and principles.” (People ex rel. Emigrant Indus. Sav. Bank v Sexton, 284 NY 57, 61, quoted in Rodriguez v New York City Hous. Auth., supra, at 79.) Emigrant was a tax certiorari case, but the cases it cites in support of said proposition generally deal with equitable awards of preverdict interest (see, CPLR 5001 [a]; Ellis v Kelsey, 241 NY 374, 379-381, King v Talbot, 40 NY 76, 94-95, and Watkinson v Laughton, 8 Johns 213, 217, cited in People ex rel. Emigrant Indus. Sav. Bank v Sexton, supra; see also, Shubert v Lawrence, 27 AD2d 292, 297). Fairness and reasonableness are obviously equitable concepts, but the cited equitable cases include an examination of good faith or misconduct (see, Ellis v Kelsey, supra; King v Talbot, supra; Watkinson v Laughton, supra), penalty-type considerations (see, King v Talbot, supra, at 95) which are seemingly not now material as far as postverdict interest (and, by parity of reasoning, postjudgment interest; but see, Matter of Riccardi v Abrams, 85 AD2d 65, 67, lv and appeal dismissed 56 NY2d 507, 1033; but see, infra) are concerned (see, Love v State, supra). Therefore, while these cases support the overarching importance of said general equitable principles in interest determinations, they are less useful in providing a more specific but no-fault based standard for the interest at bar.
Such a standard can be found by reference to the other Court of Appeals case cited and quoted in Rodriguez (supra), to wit, *651 City of Buffalo v Clement Co. (28 NY2d 241), an appropriation case. The issue of a preverdict interest rate is most frequently litigated in such cases and the standard often stated therein is that the statutory rate is deemed reasonable unless the legislative presumption associated therewith is overcome by evidence demonstrating said rate is unreasonably lower (or higher) than prevailing market rates (see, e.g., Adventurers Whitestone Corp. v City of New York, 65 NY2d 83, 86, 87). Under this standard, there must be more than a slight variation between the statutory rate and market rates (see, Matter of City of New York [Brookfield Refrig. Corp.), supra, at 537-538), and short-term or particular fluctuations in specific categories of market rates are not enough (see, Matter of County of Nassau [Eveandra Enters.], 42 NY2d 849, 850-851, appeal dismissed 434 US 804). Of course, preverdict interest in eminent domain cases is based on the constitutional requirement of just compensation (see, US Const 5th Amend; NY Const, art I, § 7 [a]; Adventurers Whitestone Corp. v City of New York, supra, at 87), while postverdict and postjudgment interest are matters of legislative grace (see, Matter of Rochester Carting Co. v Levitt, 36 NY2d 264, 266) and thus are not generally subject to said constitutional requirement (see, id., at 268).[3] Nonetheless, unless there are special circumstances calling for the invocation of other “rules and principles” (see, 187 Misc 2d, at 646, supra), we believe said eminent domain standard is a usable one for determining fair and reasonable such interest rates in the exercise of judicial discretion.
Another way to look at fair and reasonable interest rates and prevailing market rates is from the point of view of a reasonably prudent investor in the position of a plaintiff (see, Matter of New York State Urban Dev. Corp. [42nd St. Dev. Project], supra, at 774, 776).[4] Relevant in this regard is the reasonably prudent investor standard fixed by law for fiduciaries (see, *652 EPTL 11-2.3; Pay v State, supra). Said standard at one time limited equity investments to 35% of assets, then 50% and finally abolished any list or quota altogether (see, L 1950, ch 464, § 1, enacting Personal Property Law § 21 [1] [m] [1]; L 1965, ch 901; L 1970, ch 321; Hoffman, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 11-2.2, at 181-182; Rohan, 1971 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 17B, EPTL 11-2.2, 1999-2000 Pocket Part, at 80; see also, L 1994, ch 609, § 1; Turano, Practice Commentaries, McKinney’s Cons Laws of NY, Book 17B, EPTL 11-2.3, 1999-2000 Pocket Part, at 99). While we do not mean to imply that investment returns by fiduciaries under these statutory standards provide any exact measure of prevailing market rates, the considerations implicit in said standards, including diversification (see, Matter of Janes, 90 NY2d 41), do support a more reasonable approach than the limited one espoused by defendant. We believe that the reasonably prudent investor standard embraces a consideration of all relevant and material circumstances and this is consistent with the refusal in Rodriguez (supra) to limit the court’s discretion to a conservative, riskless assumption (see, 187 Misc 2d, at 648-649, supra).
As noted, the rate set by the Legislature is presumptively fair and reasonable (Rodriguez v New York City Hous. Auth., 91 NY2d, supra, at 81) and a party challenging that rate has the burden of overcoming the legislative presumption by showing the statutory rate is unreasonably high or low compared to prevailing market rates (see, 187 Misc 2d, at 649-651, supra; cf., Metropolitan Transp. Auth. v American Pen Corp., 253 AD2d 366, 367, affd 94 NY2d 154). Until recently, such challenges were generally brought by claimants who contended statutory rates as low as 4% were unreasonably low (see, Matter of City of New York [New Mun. Bldg.], 57 Misc 2d 156, affd sub nom. Matter of City of New York [Manhattan Civic Ctr. Area], 32 AD2d 530, affd 27 NY2d 518; see also, Matter of City of New York [Brookfield Refrig. Corp.], 58 NY2d, supra, at 538). In that context, an obvious means of showing the statutory rate was too low was to demonstrate that even the most conserva *653 tive and risk-free investments were paying a higher rate. Such a showing provided a logically persuasive if not conclusive basis on which to find said presumption rebutted. We now have the situation where government entities are claiming the statutory rate is too high, but the fact the most conservative and riskless investments are lower does not logically or manifestly mandate the conclusion claimed. As Rodriguez expressly recognized, other investments may be properly considered and logically the surest way to show statutory rates are too high is to show all reasonable investment possibilities are lower. Stated otherwise, if the highest returning but reasonably risked investments are significantly lower than the statutory rate, then it can be safely assumed the latter is unreasonably high and said presumption of fairness and reasonableness is overcome. Showing that the lowest returning investments are lower than said rate simply does not have the same logical import.
Here, the affidavit of defendant’s economic expert provides rates only for three-month and one-year Treasury bills.[5] He states “[t]he assumption must be that the investment most reflective of the sums due to the claimants as interest on the judgment is that which provides the highest possible ‘risk-free’ return.” However, he finds said Treasury bills are the only such risk-free investments. This economist does concede that “with hindsight and a fortuitous bull market * * * a [higher-risk-return, equity-blended investment] portfolio might be viewed as a reasonable, even conservative, investment vehicle,” but he concludes such “incorporates a significant component of risk, dependent on fluctuating market conditions” and “the statutory rate of interest, while less than equity returns in a remarkably favorable market, in effect, provides a windfall to the claimants for risks not taken.” Without citation, the State’s attorney alleges “[t]he purpose of interest payable on a judgment is to compensate the successful litigant for the loss of value * * * due to inflationary forces and the lost opportunity of use of the damages awarded.” However, again without citation, he contends “[interest on a judgment is not a substitute for the potential gains (or losses) capable of being realized from the use of the award as such potential profits or losses largely *654 reflect the degree of risk actually assumed in any investment opportunity,” and “[n]o significant degree of risk is associated with an indebtedness, owed here by the state, which is backed by the authority of the court.”[6] Seemingly defendant is taking its cue from the argument in Auer that a claimant is not entitled to any interest premium for risk because risks are not in fact taken (see, Auer v State, 185 Misc 2d, supra, at 263-264). However, the reason risks are not taken is because the claimant does not have the money in the first place. As noted, the purpose of interest is to compensate a claimant for the loss of use of the money awarded; in other words, for the loss he sustained because he did not have the money to invest in reasonably risked investments (see, 187 Misc 2d, supra, at 652). The Auer court apparently engaged in an academic dissection and reformulation of interest[7] and then eliminated one of the three components found (the risk premium; see, Auer v State, supra, at 263), in disregard of said judicially found purpose. Defendant essentially argues that any investment having risk greater than Treasury bills should not be considered and we find this contrary to the noted Rodriguez holding that such is not the governing assumption (see, 187 Misc 2d, supra, at 648). Indeed, the Court of Appeals has indicated that private as well as public securities should be considered in interest determination (cf., Matter of City of New York [Brookfield Refrig. Corp.], supra, and Matter of County of Nassau [Eveandra Enters.], supra, cited in Auer v State, supra, at 261; see also, Matter of City of New York [New Mun. Bldg.], 57 Misc 2d, supra, at 159-160, cited in Auer v State, supra, at 260), and even Federal courts have considered corporate bonds (see, Auer v State, supra, at 262, n 5). Since the only evidence the State presented on this motion was limited to said short-term riskless Federal securities, we find the State has not made a prima facie showing sufficient to overcome the presumption associated with the statutory rate (see, 187 Misc 2d, supra, at 652). Absent such a showing, no hearing or further proceedings are necessary.
*655 As noted, the interest at issue is subject to complete legislative control (see, 187 Misc 2d, supra, at 651) and the discretion we exercise here is because the Legislature has seen fit to only set a maximum rate, thereby not totally preempting the determination of said interest rate (cf, CPLR 5004). The Court of Appeals has seemingly interpreted this basically limited judicial discretion to permit a court to find a fair and reasonable rate where the prevailing market rates are unreasonably higher or lower than the statutorily fixed maximum. The Federal Government has seen fit to totally preempt the determination of rate as to postjudgment interest (see, Auer v State, supra, at 265, n 7) and the State Legislature could similarly so act if it so desired. It has not and thus we as a court have the power to exercise our discretion when the legislative maximum is shown to have become unfair and unreasonable. The mathematical precision obtainable under the Federal law may be attractive, but the computation there is specifically fixed by statute (see, 28 USC § 1961 [a]). This State has a different standard and just because an average can be calculated to the nearest 100th of a per cent (see, Auer v State, supra, at 265, 266) does not mean it fairly and reasonably reflects the return a claimant could reasonably obtain if he or she had the use of the money awarded. Frankly, we are somewhat uncomfortable with such precise calculations of generalized concepts like fairness and reasonableness in that they often give an arguably false impression of accuracy and certainty.
Stability and certainty are desirable attributes for postverdict and postjudgment interest (see, Matter of County of Nassau [Eveandra Enters.], 42 NY2d 849, supra) and thus a court should be circumspect before interjecting itself into this legislatively limited area (see, Sassoonian v City of New York, 261 AD2d 319, 320). We find nothing wrong in using hindsight for postverdict interest (cf., Auer v State, supra, at 263) and indeed, where a long period has elapsed since a liability decision (such as the four years here), the consideration of longer term securities is appropriate in the threshold determination of unreasonableness (see, Pay v State, 176 Misc 2d, supra, at 543). Relying on the lowest market rates to determine whether a statutory rate is too low is contrary to logic, case law and the legislative presumption attached to such rate. We therefore respectfully disagree with the indicated implications and ultimate findings in Auer.

. The average auction price of one-year Treasury bills is fixed by statute as the rate for postjudgment interest in Federal cases (see, 28 USC § 1961 la)).

. Case law has often distinguished between only pre- and postjudgment interest, apparently because interest between verdict and judgment (i.e., postverdict interest) was not generally significant (see, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 5002, at 398-399). However, with the advent of bifurcated trials and occasional associated delays (particularly where interlocutory appeals and structured judgments are involved), this item of interest has become more important in some cases. In any event, in analyzing prior case law, we have generally interpreted pre- and postjudgment interest references to include postverdict interest in the latter.

. Just compensation vis-á-vis interest is often stated in terms of interest compensating for the loss of beneficial use of the taken property during the period between taking and award (see, e.g., Adventurers Whitestone Corp. v City of New York, 65 NY2d, supra, at 87). Thus, depending on the nature of the appropriated property, such preverdict compensation could entail the consideration of something other than prevailing market rates, such as fair rental value (see, Andrews v State of New York, 19 Misc 2d 217, 227, affd 11 AD2d 599, affd 9 NY2d 606, cert denied 368 US 929). However, for the purely legislative postverdict and postjudgment interest, we believe said rates provide a reasonable and reasonably ascertainable standard.

. Love v State (78 NY2d 540, supra) did refer to profit earned by a defendant as a justification for postverdict interest, but we believe this was only a rhetorical reference for the purposes of argument (see, id., at 545). The gen *652 eral rule of damages is the loss to the plaintiff is the proper measure, not profit or gain obtained by the governmental defendant during the period for which interest is payable (see, Matter of New York State Urban Dev. Corp. [42nd St. Dev. Project], supra, at 774, 775-776; cf., Matter of County of Nassau [Eveandra Enters.], supra, at 850; see generally, 36 NY Jur 2d, Damages, § 9, at 23; 9 Encyclopedia NY Law, Damages § 3 [defendant’s gain may be considered if greater than plaintiffs loss]). Thus, what the State could have obtained on the money it held is not generally a proper measure of interest.

. For postverdict interest, he found an average from the date of the liability decision to the date of judgment (see, 187 Misc 2d, supra, at 648) of 5.092% for three-month bills and 5.275% for one-year ones. For postjudgment interest, he found rates at the time of judgment of 6.269% for three-month bills and 6.375% for one-year ones.

. It is the fact the judgment indebtedness is owed by the State which makes it of minimal risk, not the fact it is backed by the authority of the court. All judgments are backed by the authority of the court. Of course, the fact the defendant is a government entity does not necessarily insure prompt or easy payment (see, Matter of Riccardi v Abrams, supra; Matter of County of Nassau [Nunley’s Carousel], Sup Ct, Nassau County, Aug. 22, 2000, Rossetti, J., index No. 27708/95, slip opn, at 2).

. The court relied on economic textbooks in arriving at its definition of interest, but it is unclear whether these were the subject of expert testimony (see generally, Prince, Richardson on Evidence §§ 7-313, 8-1109 [Farrell 11th ed]).