[727 NYS2d 507]

Sarah E. Auer, Individually and as Guardian of Melody D. Auer, et al., Appellants, v State of New York, Respondent.

Third Department, June 28, 2001

**APPEARANCES OF COUNSEL**

*Rosenblum, Ronan, Kessler & Sarachan,* Albany (*Michael W. Kessler* of counsel), for appellants.

*Eliot Spitzer, Attorney General,* Albany (*Michael S. Buskus* of counsel), for respondent.

### OPINION OF THE COURT

PETERS, J.

After a bifurcated trial arising out of a 1990 automobile accident in which Melody D. Auer was a passenger, the Court of Claims (King, J.), by decision filed on November 16, 1998, found the State 80% liable for the catastrophic physical injuries she sustained. A trial on damages resulted in a decision filed on December 30, 1999 wherein the Court of Claims (King, J.) determined that Melody's damages totaled $18,952,486, with a further award of approximately $150,000 to claimants, Melody's parents, on their derivative claims. A judgment, entered on January 11, 2000, directed payment of the derivative claims with interest at a rate of 9% from November 4, 1998 to January 11, 2000. However, the amount awarded to Melody, through her guardian, was held in abeyance pending a hearing pursuant to CPLR article 50-B. Due to the retirement of Judge King, the matter was transferred to another Judge.

At a preliminary conference held prior to the CPLR article 50-B hearing, the Court of Claims was advised that the parties had reached an agreement regarding the discount rate for the present value of future damages. Prior to the CPLR article 50-B calculations, however, the court had to determine whether certain adjustments to Melody's award for future damages should be redesignated as past damages and what the proper postdecision and postjudgment interest rate should be pursuant to CPLR 5002 and 5003.

The Court of Claims (Read, P. J.) denied, as premature, claimants' request to redesignate portions of the future damages award as past damages and concluded that the presumptively reasonable 9% interest rate set forth in State Finance Law § 16 was "unreasonably high" because of the "consistent several percentage point disparity" between the statutory rate and the yields from 52-week United States Treasury bills. According to the court, it was proper to compare the statutory interest rate to the rates of return from riskless public securities but not private securities, because of the underlying purposes which should be served by an award of interest—"to compensate a successful litigant for the loss of value * * * and the loss of access and use of the damages award * * * during the interval of delay between verdict or decision and payment." Hence, the court reasoned that the interest award does not

imply "a premium for risks, in fact, not taken." Accordingly, the court applied a postdecision (prejudgment) interest rate of 5.23% and postjudgment rate of 6.375% to be recalculated quarterly for the life of the 38-year structured judgment. This appeal ensued.

Generally, the applicable rate of interest upon judgments is fixed at 9% per year "except where otherwise provided by statute" (CPLR 5004).* State Finance Law § 16 provides that the maximum interest rate that can be applied to judgments against the State "shall not exceed" 9% per year. The Court of Appeals, in *Rodriguez v New York City Hous. Auth.* (91 NY2d 76), held that similar statutes embodying the "shall not exceed" qualifying language permit a court, in its discretion, to impose a rate of interest lower than 9% (*id.*, at 80). Therein, it noted:

> "that the Legislature has set 9% as the rate of interest to be generally imposed so that amount is presumptively fair and reasonable, notwithstanding any contemporaneous grant of judicial discretion to impose a lesser amount * * *. The fact that another interest computation may also be 'reasonable' does not mandate the selection of that rate in an exercise of discretion" (*id.*, at 81 [citation omitted]).

In addition, the Court specifically "decline[d] to endorse" (*id.*, at 81) the contention that the "interest rate 'should be based on the assumption that a reasonable plaintiff would have placed the verdict or judgment amount in a relatively safe investment, such as a Treasury security'" (*id.*, at 80-81). In a later decision concerning prejudgment interest, the Court of Appeals, citing to *Rodriguez*, opined that the statutory presumption "can be overcome by evidence that the rate would result in a denial of just compensation, or unfairness" (*Matter of Metropolitan Transp. Auth. v American Pen Corp.*, 94 NY2d 154, 158 n 1; *see, Adventurers Whitestone Corp. v City of New York*, 65 NY2d 83, 87, *appeal dismissed* 474 US 935; *see also, Matter of County of Nassau [Eveandra Enters.]*, 42 NY2d 849, 850, *appeal dismissed* 434 US 804).

Here, according to the Court of Claims, the State had to proffer "evidence sufficient to persuade the trial court that the statutory rate is unreasonably high and, if the [State] makes such a showing * * * the trial court[ ] [has] discretion to award

---

* *Rodriguez v New York City Hous. Auth.* (91 NY2d 76, 78-79) reviews the historical context of this provision.

interest at a lower rate" (185 Misc 2d 254, 258). Moreover, the court reasoned that "[o]n such matters as the weight of evidence sufficient to oust the presumption or how great a disparity renders the statutory interest rate unreasonably high or how to fix or select a lower interest rate, *Rodriguez* affords the trial court infinite latitude" (*id.*, at 258). Hence, the Court of Claims concluded that "the relevant evidentiary touchstone for evaluating the reasonableness of the statutory interest rate in a contested case and determining any alternative rate of interest" (*id.*, at 263) must be a comparison of the statutory interest rate "in relation to prevailing market interest rates for the relevant time" (*id.*, at 264; *see, Adventurers Whitestone Corp. v City of New York, supra*, at 87).

Despite claimants' contention that the standard enunciated by the Court of Claims to overcome the statutory rate's presumption of reasonableness is in error, we do not find it to be outside of the Court of Appeals guidance when that Court equated the showing to one of "unfairness" (*Matter of Metropolitan Transp. Auth. v American Pen Corp.*, 94 NY2d 154, 158 n 1, *supra*; *see, Adventurers Whitestone Corp. v City of New York, supra*, at 87). However, we do disagree with the Court of Claims that it has "infinite latitude" in analyzing the quantum of evidence which would be sufficient to overcome the presumption (185 Misc 2d 254, 258, *supra*).

Applying the reasoning employed by the Court of Appeals in determining rates of interest to be awarded in an eminent domain proceeding (*see, City of Buffalo v Clement Co.*, 28 NY2d 241, 265-266) and in a tax assessment proceeding (*see, Matter of FMC Corp. v Unmack*, 92 NY2d 179, 187), we are guided that a presumptively reasonable statutory rate may be overcome with "substantial evidence" that the rate is unreasonably high (*see, id.*, at 187; *City of Buffalo v Clement Co., supra*, at 266). To rebut the presumption, a defendant must first demonstrate that the statutory rate is unfair or unreasonable by " 'proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably—probatively and logically' " (*Matter of FMC Corp. v Unmack, supra*, at 188, quoting *300 Gramatan Ave. Assocs. v State Div. of Human Rights*, 45 NY2d 176, 179-181). Once the presumption is sufficiently rebutted, "a court must weigh the entire record * * * to determine whether [the defendant] has established by a preponderance of the evidence" (*Matter of FMC Corp. v*

*Unmack, supra*, at 188) that the statutory rate is "unfair[ ]" (*Matter of Metropolitan Transp. Auth. v American Pen Corp., supra*, at 158 n 1). To satisfy the "substantial evidence" and "preponderance of the evidence" standards, the defendant must show that all reasonable investment possibilities during the relevant time period demonstrate that the statutory rate is unreasonably high as compared to prevailing market rates (*see, Guido v State of New York*, 187 Misc 2d 647, 653-654). If a preponderance of the evidence supports such a finding, the court may establish a new interest rate within the exercise of its discretion (*see, Rodriguez v New York City Hous. Auth.*, 91 NY2d 76, 80-81, *supra*), keeping in mind that "[t]he purpose of postverdict and postjudgment interest is to provide the claimant with compensation for the loss of use of the money awarded from the date of verdict or decision to payment" (*Guido v State of New York, supra*, at 649); "[t]he fact that another interest computation may also be 'reasonable' does not mandate the selection of that rate in an exercise of discretion" (*Rodriguez v New York City Hous. Auth., supra*, at 81).

Within this analytical framework, we find that the State failed to overcome the presumption of reasonableness of the statutory rate because its showing solely addressed the rates of return from riskless public securities. In our view, the contention that this proffer was sufficient is not " 'reasonabl[e,] probative[ ] [or] logical[ ]' " (*Matter of FMC Corp. v Unmack, supra*, at 188, quoting *300 Gramatan Ave. Assocs. v State Div. of Human Rights, supra*, at 181) since it ignores the risk premium component of interest by reasoning that claimants should not be subsidized "for risks, in fact, not taken" (185 Misc 2d 254, 264, *supra*). Clearly, Melody should not be penalized for the fact that her guardian was precluded by the court from investing the money in the first instance due to its nonavailability. Had it been available, the guardian would have been held to the prudence rules in effect from the date of the liability determination and chosen, in all likelihood, a "diversified risk-balanced portfolio" (*Pay v State of New York*, 176 Misc 2d 540, 544; *see, Matter of Janes*, 90 NY2d 41, 49-54).

Subsequent decisions of the Court of Claims are in accord with our conclusion. In *Guido v State of New York* (187 Misc 2d 647, *supra*), where the State's evidence was limited to short-term, riskless Federal securities, the court broke from *Auer* and concluded that *Rodriguez* expressly recognized that both public and private investments should be properly considered (*id.*, at 648-649). It found that "the surest way to show statu-

tory rates are too high is to show all reasonable investment possibilities are lower. * * * Showing that the lowest returning investments are lower than [the statutory] rate simply does not have the same logical import" (*id.*, at 653). Similarly, in *Molinari v City of New York* (176 Misc 2d 523), again relying on *Rodriguez*, the trial court rejected the contention that the presumption accorded the 9% statutory interest rate could be overcome by a showing solely focused on riskless Federal securities (*id.*, at 527-528; *see, Fisher v State of New York*, Ct Cl, Apr. 11, 2001, Lane, J.; *James v State of New York*, Ct Cl, Mar. 23, 2001, Nadel, J.).

Hence, it appears that despite the decision of the Court of Claims here, these courts all came to the conclusion that fairness and reasonableness render it illogical to focus solely on risk-free Federal securities when attempting to show that the statutory rate is unreasonably high. We agree that if the presumption of reasonableness is to be overcome, the proffer must consist of a showing that prevailing market rates in both public and private securities reveal that returns from reasonably risked investments remain significantly lower than the 9% statutory interest rate (*see, James v State of New York, supra; Guido v State of New York, supra; Molinari v City of New York, supra*). For this reason, we find that the State has not overcome the presumption.

As to the contention that the Court of Claims erred when it denied, as premature, claimants' application to recategorize a portion of future damages as past damages to be paid immediately, we can find no abuse of discretion due to the short interval between the entry of the damage award and the court's determination (*cf., Bermeo v Atakent*, 276 AD2d 361, 362; *see, Williams v Bright*, 230 AD2d 548, 557, *appeal dismissed* 90 NY2d 935). In light of our determination, we decline to review claimants' remaining contentions.

MERCURE, J. P., SPAIN, CARPINELLO and MUGGLIN, JJ., concur.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as deviated from the interest rate specified in State Finance Law § 16; claimants' motion to apply the statutory interest rate granted; and, as so modified, affirmed.