OPINION OF THE COURT
Stanley Parness, J.
Condemnor and claimant both move to resettle the judgment *304 to be entered as it relates to interest on condemnation awards made on properties taken in the above 1994 and 1995 vestings. Claimant seeks prejudgment interest at the 9% rate permitted by the statute, while condemnor urges interest at 6%.
In the judgments entered against this same condemnor upon the awards made on the properties vested in 1990, interest was fixed by this court at the 9% rate set forth in CPLR 5004 for the reasons stated in this court’s March 1998 decision (Matter of New York State Urban Dev. Corp. [42nd St. Dev. Project], 176 Misc 2d 772). With respect to the judgments at issue, condemnor asks the court to consider a rate lower than 9%, citing Rodriguez v New York City Hous. Auth. (91 NY2d 76, 81) as authority for such trial court discretion. Rodriguez essentially held that the statutory 9% as applied to judgments against certain governmental entities (including condemnor) sets only the maximum rate.
However, though Rodriguez determined that a judgment court under CPLR 5004 could set an interest rate at less than 9%, it set no specific guidelines as to the discretionary factors that should be considered. Of course, on the issue of what interest would be appropriate, account must be given to the fact that, in condemnation, the owner’s property at vesting is in effect converted to an immediate claim for compensation. Any delay in payment of same warrants imposition of prejudgment interest not as a matter of legislative grace, as it is in the usual case awarding damages, but as part of the just compensation mandated by the Constitution when property is expropriated. “To ensure that a condemnee obtains just compensation, the State is constitutionally required to pay prejudgment interest to compensate for delay in making payment and deprivation of use of the property (Matter of City of New York [Brookfield Refrig. Corp.], 58 NY2d 532, 536-537).” (Matter of Metropolitan Transp. Auth. v American Pen Corp., 94 NY2d 154, 158.) “The amount of interest necessary to bring the payment into accord with the constitutional requirement is a judicial question, although the interest rate fixed by the Legislature will be deemed presumptively reasonable.” (Adventurers Whitestone Corp. v City of New York, 65 NY2d 83, 87.)
Condemnor, citing the discretionary authority granted to the trial court by Rodriguez to fix a lower rate than 9%, asks the court to consider the “virtual risk free” nature of the condemnation award as warranting a lower rate. To that end, it cites to interest paid on “risk free” short-term government debt *305 securities. However, condemnor cites no precedent for the proposition that the financial soundness of a judgment debtor and the “risk free” collectability of the award should mitigate the interest paid. Further, a judgment debt is not an investment in the condemnor, and thus measuring the interest to be paid thereon on the risk of its collection has no relevancy.
In opposition to condemnor’s application and in support of the statutory 9% interest, claimant asserts, inter alia, the 9% rate applied by the State to New York State capital gains tax to which the award is subject, the capitalization rate of 10% employed by condemnor’s appraiser at trial (the court applied 9.5%), and returns obtained on various other types of investment.
To date various appellate and trial courts (including this one) have sustained the 9% rate for relevant interest periods, essentially determining that the various objectants to the 9% rate have failed to persuade that the presumptively reasonable statutory rate is “unreasonably high.” (Auer v State of New York, 283 AD2d 122 [and cases cited therein].)
The issue remaining unresolved under Rodriguez, however, is to what extent and how often may or must a judgment court (and specifically this court), upon application, continually reexamine the propriety of the 9% rate. Rodriguez, in leaving the interest rate issue to the trial court’s discretion, could not have intended that each court entering judgment be free to make its own determination as to the interest rate, subject only to the statutory maximum 9%. Such ad hoc approach obviously raises the potential for different rates on different judgments for the same interest period, a circumstance the avoidance of which prompted a change in 1972 in CPLR 5004. As the Court of Appeals pointed out in Rodriguez, the reason CPLR 5004 was amended was to provide for a fixed rate rather than its previous reference to the fluctuating legal rate fixed by the Banking Board, this to “facilitate the administrative act of entering judgments with interest ‘without possible controversy over differing rates for different periods.’ ” (Rodriguez, supra at 78.)
As a result of a stated rate in CPLR 5004 rather than the previous fluctuating one, rarely is the trial court now involved in the actual computation of interest paid and entry into the judgment, a matter more appropriately left to the expertise of the judgment clerk. Leaving the issue of interest rate to continual examination by each judgment entering court would lead to the “controversy over rates,” which, as noted, the amendment to CPLR 5004 sought to avoid.
*306 Further, uncertainty as to judgment rate would turn entry of judgment, presently now a clerk-administered function, into a postverdict litigated matter (as it now has), further burdening an already busy trial court. This aside from the potential for different interest rates being fixed by different courts for the same interest period, and the constitutional implications of such occurrence in condemnation cases. Indeed, it has been held that differentiation of rates for the same interest period is “unreasonable and palpably improper * * * the Constitution guarantees the same measure of just compensation to all owners of property.” (Metropolitan Transp. Auth. v American Pen Corp., supra at 160-161 [internal quotation marks omitted].)
In sustaining the various lower courts’ use of the 9% rate (or reversing those that did not), the cited appellate courts have relied on the failure of objectants to persuade that the 9% rate “is unreasonably high” rather than said courts affirmatively holding that the 9% rate is the appropriate rate to be applied for the various interest periods at issue. Though said appellate decisions may thus lack technical precedential value as to the interest rate to be employed, it does not appear to this court that, under the facts herein, there could be any further arguments advanced for a lower rate that would be any more persuasive than those raised and rejected by both the appellate and trial courts cited herein. It is, therefore, this court’s opinion that the 9% rate has sufficiently and significantly withstood challenge both at the trial and appellate level (and in this court) to warrant its preclusive application to the interest periods at issue, herein, this without further examination as to its propriety. Further, a finding of a lesser rate for the judgments herein than that fixed by this and other courts for condemnation awards for relevant interest periods would, as noted before, be unconstitutionally discriminatory, and therefore “unreasonable and palpably improper” (Metropolitan Transp. Auth. v American Pen Corp., supra).
Accordingly, the court fixes the rate of prejudgment interest to be paid in the above-captioned matters at 9% per annum until date of payment and judgments shall be entered consistent with this determination.