■ BERNARD HOHENBERG et al., Respondents, v 77 WEST 55TH STREET ASSOCIATES et al., Defendants, and BOARD OF MANAGERS OF THE GALLERY HOUSE CONDOMINIUM, Appellant. BER-

NARD HOHENBERG et al., Respondents, v 77 WEST 55TH STREET ASSOCIATES, Appellant, et al., Defendants.—Judgment of the Supreme Court, New York County (Allen Murray Myers, J.), entered March 6, 1985, which, after a nonjury trial, awarded plaintiffs compensatory damages in the sum of $73,200 and punitive damages in the sum of $100,000 and directed the abatement of the nuisance, is unanimously modified, on the law, to strike the award for punitive damages against defendant Board of Managers, The Gallery House Condominium, and otherwise affirmed, without costs or disbursements.

Order of the Supreme Court, New York County (Allen Murray Myers, J.), entered June 18, 1985, which, *inter alia,* denied the cross motion of defendant 77 West 55th Street Associates for an order pursuant to CPLR 4404 (b) or 5015 vacating the award of punitive damages in the above judgment as against it, is unanimously affirmed, without costs.

This is the second trial of this matter. Plaintiffs have been the tenants of apartment 2B at 77 West 55th Street since 1966. In 1977, the plaintiffs complained to the then landlord, defendant 77 West 55th Street Associates, about a penetrating noise and vibration in their apartment, particularly in their bedroom. Plaintiffs retained an architect and an acoustical engineer to determine the cause of the noise. These experts concluded that the noise, called a "pure tone noise", was emanating from the cooling systems of the apartment building and of the ground-floor supermarket below, defendant 1366 Food Corp., owned by defendant Arnold Buchoff. The apartment building was converted to condominium ownership in 1971, at which point defendant Board of Managers, The Gallery House Condominium, became responsible for the common areas of the building. Although plaintiffs repeatedly complained of the noise and attempted to have the defendants correct same, no steps to abate the noise were taken by any of the defendants.

In 1980, the plaintiffs purchased the apartment as a condominium unit and expended large sums of money to change the layout of the apartment, moving the location of their bedroom to another area of the apartment. However, the noise persisted and defendants took no steps to correct it.

At the first trial of this action, Trial Term dismissed the cause for punitive damages, did not direct an abatement of the nuisance, but did grant compensatory damages in the sum of $6,734.78, representing 30% of the rent for the years in question, as a result of the "pure tone noise" or nuisance.

The plaintiffs' notice of appeal to this court specifically limited the appeal to that part of the judgment "which failed and omitted to provide for the abatement of the nuisance * * * and from only that part of said judgment". This court reversed the judgment and remanded the case for a new trial (*Hohenberg v 77 W. 55th St. Assoc.,* 90 AD2d 750).

Prior to this retrial, the supermarket defendants settled with plaintiffs for $17,300, which amount was to be deducted from the judgment against the other defendants. The former landlord, defendant 77 West 55th Street Associates, intentionally defaulted and did not participate in the second trial. Trial Term directed that the nuisance be abated by a date certain, awarded compensatory damages of $73,200, which included one half the cost of renovating (referred to as "flipping" the apartment) or changing the layout of the apartment ($54,000) plus $200 monthly for each month that the noise or nuisance remained unabated until March 15, 1985 ($19,200), and $100,-000 in punitive damages.

The award of punitive damages against defendant The Gallery House Condominium was improper. As noted, the original appeal by plaintiffs to this court was limited only to that portion of the original judgment which did not direct an abatement of the nuisance. That judgment dismissed the cause for punitive damages and this court's reversal of the judgment in no way may be interpreted as a resuscitation of the punitive damages cause. In short, the denial of punitive damages in the first judgment was not appealed by plaintiffs on the prior appeal and was a matter beyond the scope of this court's remand on that prior appeal.

Defendant Board of Managers argues, in a similar fashion, that plaintiffs' prior notice of appeal and this court's prior remand were limited solely to the issue of abatement of the nuisance and that, therefore, Trial Term had no authority to award the sum of $73,200 as and for compensatory damages. This court's reversal on the first appeal was due to the fact that the first Trial Justice did not consider the feasibility of abatement of the nuisance. Upon the remand, this court directed *(supra)* that, in fashioning relief, the trial court was to determine the case one of two ways: "[B]y a direction to proceed to abate the nuisance with an award of appropriate damages *ab initio* and during the continued interval until abatement is achieved, or, should the balance point in the direction of nonfeasibility or an outrageous and inappropriate cost of abatement, as well as the inconvenience to other proprietary lessees, to award permanent compensatory dam-

age to plaintiffs for being compelled to endure the nuisance." Thus, the question of compensatory damages is inextricably tied to the question of feasibility of abatement of the nuisance. Trial Term, therefore, had no choice but to consider compensatory damages anew and was not limited by the prior trial court's determination of the appropriate amount of compensatory damages.

Furthermore, the award of $73,200 in compensatory damages appears entirely appropriate. This sum represents $200 monthly from the inception of the nuisance to its abatement ($19,200), which is about one third of the rent paid during this period. Moreover, the remaining $54,000 in compensatory damages was awarded by the court due to the necessity of changing the layout of the apartment, referred to as "flipping" the apartment.

With respect to the appeal of defendant 77 West 55th Street Associates from that portion of Special Term's order which denied its cross motion to vacate the award of punitive damages against it in the judgment, this cross motion was made after plaintiffs moved to punish defendants for contempt for failing to abate the nuisance. The motion to punish for contempt was denied because the defendant The Gallery House Condominium was in good faith attempting to eliminate the noise, which it was eventually successful in doing. The moving papers do not attempt to explain this defendant's default in appearing at the second trial and it is clear that the default was intentional. Hence, the court was without a basis to relieve defendant from its default pursuant to CPLR 5015 (a) (1).

A party may not appeal from a judgment entered upon its own default (CPLR 5511) and is relegated to a motion pursuant to CPLR 5015 (a) (1)—excusable default. Defendant 77 West 55th Street Associates filed a notice of appeal from the judgment but withdrew same, apparently recognizing this rule. Here, no excuse was offered and the failure to take part in the second trial was intentional. Nor may this defendant do indirectly what it is unable to do by direct appeal or proper motion to open a default. CPLR 4404 motions to set aside a court's decision or a jury's verdict are reserved for those parties who took part in the trial. Concur—Kupferman, J. P., Sandler, Sullivan, Asch and Kassal, JJ.