OPINION OF THE COURT
Michael D. Stallman, J.
Defendant Board of Managers of the 225 East 57th Street Condominium moves, pursuant to CPLR 3211 (a), to dismiss the complaint.
Background
This case involves a dispute between Thomas Campaniello, the owner of two commercial condominium units (units A and B) at 225 East 57th Street, New York, New York, and the condominium, concerning access of unit B to the auxiliary water tower located on the roof of the building. 225 East 57th Street is a mixed-use building comprised of residential co-op units and several commercial spaces which are owned as condominiums. Campaniello rents unit B to Waterworks, which uses the space as a showroom for high-end designer bathroom fixtures and plumbing supplies.
During certain months of the year, the auxiliary water tower supplies water for the air-conditioning system of unit B. For at least one half of the year, air conditioning is provided throughout the building by means of a connection to the main water tower on the building’s roof. After the main water tower is disconnected in the beginning of November, and until it is reconnected in the spring, the air-conditioning system for unit B utilizes water from the auxiliary water tower, which services only that unit.
Beginning in February 2003, there was an exchange of correspondence between the condominium and Campaniello, and their respective attorneys, concerning the condominium’s allegations that the duct work for unit B’s air-conditioning system was improperly connected to the basement ventilation system, resulting in water leakage and bad air quality in the building’s basement that adversely affected both workers and building residents while they were in the basement. It was the position *228 of the condominium that the duct work for the auxiliary tower violated the New York City Building Code, and that Campaniello, as the owner of the only unit utilizing the auxiliary tower, was responsible for remedying the defect.
Campaniello’s position was that the duct work had been installed prior to his purchase of unit B, and that under the declaration of condominium, it was the responsibility of the condominium to remedy any alleged defects in the duct work or venting.
On February 6, 2004, Joseph A. Boyle, counsel for the condominium, wrote to Niles Welikson, counsel for Campaniello, indicating that if Campaniello did not do the necessary work to remedy the problem, the condominium would arrange to have that work done at Campaniello’s cost. Boyle attached an estimate for the work in the amount of $7,260.
On April 2, 2004, Gail Wainer, the managing agent for the condominium, wrote to Waterworks, indicating that, rather than carrying out the work, the condominium was planning to disconnect the hookup to the ventilation system after April 7, 2004. Wainer wrote to Campaniello on April 14, 2004, indicating that the cooling tower would be disconnected on April 21, 2004.
It is not clear on what date the auxiliary tower was disconnected, but on July 22, 2004, Campaniello learned that the tower had been disconnected.
The amended complaint asserts three causes of action.
The first cause of action alleges that, pursuant to article 6 (c) and (e) and article 11 of the declaration of condominium, unit B was entitled to the use of the auxiliary tower, and the condominium’s act of disconnecting the tower constituted a trespass to plaintiffs property and a breach of the condominium’s bylaws and declaration of condominium. Plaintiff further alleged that defendant’s actions were wilful, malicious and unconscionable.
The second cause of action alleges that disconnecting the auxiliary tower resulted in a partial eviction of plaintiff from unit B, and that plaintiff is entitled to recover all common charges paid from the date the tower was disconnected until it is reconnected as well as credit for any unpaid common charges during that period.
The third cause of action alleges that as a result of defendant’s refusal to reconnect the auxiliary tower, plaintiff sought a preliminary injunction. Plaintiffs motion was denied by Supreme *229 Court Justice Harold Beeler for failure to show irreparable harm. The cause of action alleges that as a consequence, plaintiff is entitled to all damages that he suffered as a result of the disconnection, as well as the costs incurred to reconnect the auxiliary tower.
Plaintiff seeks both compensatory and punitive damages for all three causes of action.
The condominium moves to dismiss the amended complaint for failure to state a cause of action.
Discussion
On a motion to dismiss, the complaint must be construed liberally and given the benefit of every inference that a cause of action exists. (Leon v Martinez, 84 NY2d 83 [1994]; Rovello v Orofino Realty Co., 40 NY2d 633 [1976].) However, a motion to dismiss will be granted where documentary evidence refutes plaintiffs claims, as a matter of law. (Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314 [2002].)
Plaintiff relies on the following provisions of the declaration of condominium in support of his position that the condominium is responsible to repair any defects in the ducts or exhaust fan that service the auxiliary water tower:
Article 6 (c):
“Each unit includes the following areas: (i) the front entrance door and any other entrance doors to such Unit and to the apartments located therein; (ii) exterior walls enclosing such Unit (if any), the interior walls, partitions and floor coverings and plastered ceilings affixed, attached, or appurtenant to each and to the Apartments located therein; (iii) all windows (including, without limitation, their panes, casements and frames) located within, or opening from each unit (if any); (iv) the lobby, hall stairs, stairways, elevators and drafts, vestibules, corridors, mechanical and electrical equipment systems located within or servicing the unit; (v) any and all equipment, fixtures and appliances (including, without limitation, heating and cooling equipment, plumbing facilities, elevator cabs, equipment, and machinery, sinks, water closets, bathtubs, ovens, ranges, dishwashers, refrigerators and any other appliances) affixed, attached, or appurtenant to such unit and benefitting or servicing only such unit, and no other unit; and (vi) all other Facilities *230 affixed, attached or appurtenant to each such Unit and benefitting only that Unit and no other Unit (such as a storage room for the exclusive use of that Unit)” (emphasis added by plaintiff).
Article 6 (e):
“The Commercial Unit includes the following areas: (i) stores located on the first (ground) floor of the Buildings: and air-conditioning equipment servicing only the Commercial Unit, commercial storage room and commercial kitchen, (ii) any and all equipment, plumbing, duct work, fixtures and appliances (including without limitation, heating and cooling equipment, plumbing facilities, sinks, waterclosets and any other appliances) affixed, attached, or appurtenant to such Commercial Unit; and (v) [sic] all other Facilities affixed, attached, or appurtenant to such Commercial Unit; (iii) exterior walls of the Building enclosing such Unit, interior walls, partitions, floors, and ceiling in, on, or under the stores within the Commercial Unit; (iv) all hallways, corridors, lobbies, vestibules, cellars, stairs, stairways, mechanical and electrical equipment spaces, and entrances to, and exits from, the Commercial Unit and servicing the Commercial Unit only; (v) all central and appurtenant installations and Facilities for services such as power, light, air-conditioning, telephone, gas, sewer, plumbing, drainage, hot and cold water distribution, ventilation, cable television, and other mechanical electrical systems which service the Commercial Unit only; and (vi) all other parts of the Buildings or on the Property either existing for the use of the Commercial Unit Owner of the Commercial Unit or necessary for, or convenient to, the existence, maintenance, or safety of the Commercial Unit to the extent same are not expressly included as part of any other Unit pursuant to the terms of Article 6 hereof, or part of the Common Elements pursuant to the terms of Article 7” (emphasis added by plaintiff).
Article 11 (a):
“Subject to the terms of the by-laws and the rules and regulations, each unit owner shall have, in common with all other unit owners, an easement to use any of the common elements and all pipes, wires, ducts, cables, conduits, public utility lines and all *231 other utility, heat, air conditioning and hot and cold water distribution systems, whether or not Common Elements, located in, over, under, through, adjacent to, or upon any other unit or the common elements to the extent that such common element or distribution system serves, or is necessary to the service of, such owner’s unit, and each unit and all of the common elements shall be subject to such easement” (emphasis added by plaintiff).
Defendant relies on the following provisions of the bylaws in support of its position that plaintiff is responsible for repairing any defects in the system connecting the auxiliary water tower to unit B:
Section 5.1 (C):
“Each Unit and all portions of the Common Elements shall be maintained in accordance with all applicable laws and regulations of any governmental authority with jurisdiction and kept in first-class condition, order and repair ... by the Unit Owner, the Apartment Owner or the Condominium Board, whichever is responsible for the maintenance thereof as set forth herein and such Unit Owner or the Condominium Board shall promptly make or perform, or cause to be made or performed, all maintenance work (including, without limitation, painting, repairs and replacements) that is necessary in connection therewith” (emphasis added by defendant).
Section 5.1 (D):
“In the event that any Unit Owner fails to maintain its Unit or any portion thereof in accordance with the requirements of applicable Law the Condominium Board shall give such Unit Owner written notice of its failure to maintain its Unit in accordance with the foregoing requirements and such Unit Owner shall within fifteen (15) days after receipt of such written notice cure any such condition or violation. . . . Upon the failure of any Unit Owner to cure such condition or violation as aforesaid, the Condominium Board shall have the right to perform all work and take all steps necessary to cure same at such Unit Owner’s sole cost and expense” (emphasis added by defendant).
Section 9.1:
“If any Unit Owner shall violate or breach any of *232 the provisions of the Condominium Documents on his part to be observed or performed, including, without limitation, any breach of his obligation to . . . maintain, repair or replace his Unit or its appurtenant Limited Common Elements pursuant to the terms of Article 5 hereof, and shall fail to cure such violation or breach with [in] fifteen (15) days after receipt of written notice of the same . . . the Condominium Board shall have the right to enter such Unit Owner’s Unit and/or its appurtenant Limited Common Elements and summarily abate, remove or cure such violation or breach without thereby being deemed guilty or liable in any manner of trespass. In addition, in the event that the Condominium Board shall determine that the abatement, removal, or cure of any such violation or breach is immediately necessary for the preservation or safety of the Buildings or for the safety of the occupants in the Buildings or other individuals or is required to avoid the suspension of any necessary service in the Building, the Condominium Board may take such action immediately, without prior notice and without allowing the said Unit Owner any period of time within which to cure or to commence to cure such violation or breach” (emphasis added by defendant).
In addition to those provisions, section 5.1 (A) of the bylaws governing maintenance and repairs states as follows:
“Except as provided in the Declaration or in these By-Laws, all painting, decorating, maintenance, repairs and replacements, whether structural or nonstructural, ordinary or extraordinary: (i) in or to any Unit and all portions thereof (including, but not limited to the exterior walls, ceilings and floors in the Unit (or the Apartment located therein) kitchen and bathroom fixtures and appliances, windows and their frames, sills and sashes, all doors (entrance and terrace, if any) and their frames and saddles, exposed plumbing, gas and heating fixtures and any Common Elements incorporated therein pursuant to paragraph (B) of Section 5.8 hereof, but excluding any other Common Elements contained therein) shall be performed by the owner of such Unit at such Unit Owner’s sole cost and expense.”
As defendant argues, after this litigation was initiated by plaintiff, his own engineer (see affidavit of Abraham Joselow) *233 recognized that problems with air quality in the basement resulted from the fact that the basement exhaust and the auxiliary tower duct work were both connected to the same duct work that is part of the building’s ventilation system. Thus, there is no dispute regarding whether a problem existed, or how to remedy that problem; the only question is who is financially responsible for that remedial work.
I
With respect to the first cause of action for breach of contract and trespass, the court concludes that because the auxiliary tower and the ducts connecting the tower to unit B service only unit B, under article 6 (c) and (e) of the declaration of condominium, they are part of that unit. Therefore, under section 5.1 (A) and (C) of the bylaws, it is the responsibility of the owner of the unit to keep the entire air-conditioning system which services only unit B in proper repair and in compliance with applicable laws and regulations. This responsibility is not eliminated by article 11 (a) of the declaration of condominium, which establishes an easement for unit owners over, among other things, ducts, air-conditioning systems and hot and cold water distribution systems used in common with other commercial or residential units. Rather, that provision merely ensures that the owner of unit B will have access to the basement ventilation system in order to vent the air-conditioning system which services only unit B. It is plaintiffs responsibility to maintain the connection between the ducts that service his unit, and the basement vent that services the entire building, in proper repair and in compliance with the laws and regulations.
Furthermore, in light of the fact that the plaintiff is responsible for the proper maintenance or repair of his unit, pursuant to section 9.1 of the bylaws, if he failed to do so, the condominium Board had the authority to abate, remove, or cure the violation, without being deemed guilty of, or liable for, trespass. Therefore, plaintiffs claim for trespass fails as well.
Defendant’s motion to dismiss the first cause of action is granted.
II
Defendant moves to dismiss plaintiffs second cause of action for partial eviction on the basis that a claim for partial eviction presupposes a warranty of habitability, which is not available to a condominium owner.
*234 Defendant is correct that a statutory claim of warranty of habitability is not available to the owner of a condominium. (See Frisch v Bellmarc Mgt., 190 AD2d 383, 389-390 [1st Dept 1993].) Neither may the owner of a condominium withhold payment of common charges or assessments based on defective conditions in his unit or in the common areas, based upon warranty of habitability. (Matter of Abbady [Mailman], 216 AD2d 115, 115 [1st Dept 1995].)
Plaintiff concedes that a claim of statutory warranty of habitability is not available, but without providing any authority, contends that a condominium owner can, nonetheless, be actually or partially evicted from his or its premises. Citing Hohenberg v 77 W. 55th St. Assoc. (118 AD2d 418 [1st Dept 1986]), plaintiff contends that, even absent a claim for warranty of habitability, damages are available for costs incurred as a result of the disconnection of the auxiliary tower, including, but not limited to, costs of reconnection.
Defendant argues that Hohenberg is distinguishable because, there, the condominium owner had previously been a tenant when his damage claim arose. In Hohenberg, however, the Supreme Court, Appellate Division, affirmed an award of compensatory damages not only for the period that the plaintiff was a tenant, but for several years after he had purchased the apartment. Nonetheless, the Hohenberg ruling is inapplicable here, because the damages there resulted from an ongoing nuisance, whereas the acts by defendant complained of by plaintiff here do not constitute a nuisance. Therefore, defendant’s motion is granted as to the second cause of action.
With respect to plaintiffs third cause of action, for the costs of reconnecting the auxiliary water tower, because the court has already concluded that under the declaration and bylaws, plaintiff is responsible for maintaining the unit’s air-conditioning system and ducts in proper repair, the third cause of action is dismissed as well.
Because plaintiffs substantive causes of action are dismissed, plaintiffs claims for punitive damages are dismissed as well.
Conclusion
Accordingly, for the foregoing reasons, it is hereby ordered that defendant’s motion to dismiss is granted and the complaint is dismissed with costs and disbursements to defendant.